THE STATE OF OHIO, APPELLANT, *v.* JOHNSON, APPELLEE.

[Cite as *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301.]

*Criminal law — R.C. 2901.21 — Determination of mens rea for element for which none is specified — R.C. 2923.13(A)(3).*

(No. 2009-1469 — Submitted May 12, 2010 — Decided December 28, 2010.)

APPEAL from the Court of Appeals for Cuyahoga County, No. 91701, 2009-Ohio-3101.

_____

## SYLLABUS OF THE COURT

1. A conviction for violation of the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that the offender is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

2. R.C. 2901.21(B) does not supply the mens rea of recklessness unless there is a complete absence of mens rea in the section defining the offense and there is no plain indication of a purpose to impose strict liability.

_____

LANZINGER, J.

{¶ 1} In this case, we are asked to determine whether there is a missing culpable mental state in the offense of having weapons while under disability, a felony of the third degree. Appellee, Steven Johnson, was convicted of this offense, as defined by R.C. 2923.13(A)(3), based on two previous convictions for drug-related offenses. The question before this court is whether R.C. 2923.13(A)(3) requires proof of the mens rea of recklessness with respect to a defendant's prior conviction. We now hold that the state need not prove a

culpable mental state for the element that a defendant is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse for a conviction under R.C. 2923.13(A)(3).

**{¶ 2}** We therefore reverse the judgment of the court of appeals and remand for consideration of Johnson's remaining assignments of error.

## I. Facts

**{¶ 3}** Johnson was arrested after a fight in a Cleveland apartment in the early morning of April 3, 2008, and was discovered in possession of a firearm. He was charged with a third-degree felony, violating R.C. 2923.13(A)(3),[1] which criminalizes knowing possession of a firearm if "[a] person is under indictment for or has been convicted of any offense involving * * * any drug of abuse." The indictment tracked the language of the statute and charged that Johnson "knowingly acquired, had, carried, or used a firearm * * * having been convicted of * * * Drug Possession, in violation of [R.C.] 2925.11, * * * and/or * * * having been convicted of the crime of Possession of Counterfeit Controlled Substance, in violation of [R.C.] 2925.37."[2]

**{¶ 4}** During trial, the judge instructed the jury that "there has been a stipulation" that Johnson had been convicted of the two offenses listed in the

---

1. {¶ a} R.C. 2923.13 provides:

{¶ b} "(A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

{¶ c} "* * *

{¶ d} "(3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been an offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse."

2. Johnson argued before the court of appeals that his conviction for possession of a counterfeit controlled substance was not a disabling conviction. That issue is not before us. He also argues that to impose strict liability would violate due process of law. Because Johnson did not raise that argument before the court of appeals in a separate assignment of error, we decline to address it.

indictment, but neither the indictment nor the jury instructions mentioned a culpable mental state to be proved with regard to the prior convictions. The jury was told that the state was required to prove beyond a reasonable doubt that Johnson knowingly possessed the firearm but was not told that the state had to prove any mental state with respect to his prior convictions or that he was aware that they prohibited him from possessing a firearm.

{¶ 5} Johnson was found guilty and was sentenced to one year in prison. He appealed his conviction, arguing that his trial was structurally flawed because the indictment failed to allege, and the jury failed to consider, whether he knew or was recklessly unaware that his prior convictions prohibited him from possessing a firearm.

{¶ 6} On appeal, the Eighth District Court of Appeals determined that the state was required to show that Johnson had knowingly possessed a firearm and that he had done so recklessly with regard to knowledge that "he had been convicted of *an offense that prohibited him* from having a weapon." (Emphasis sic.) *State v. Johnson*, 8th Dist. No. 91701, 2009-Ohio-3101, ¶ 32.

{¶ 7} We accepted the state's discretionary appeal on the following proposition of law: "When a disability is based on a prior conviction, the State is not required to prove that a defendant is reckless in his knowledge that a prior conviction creates a disability that criminalizes knowing possession of a firearm or dangerous ordnance." We agree with the state's proposition of law and hold that a conviction of the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that the offender is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. We further hold that R.C. 2901.21(B) does not supply the mens rea of recklessness unless there is a complete absence of

mens rea in the section defining the offense and there is no plain indication of a purpose to impose strict liability.

## II. Legal Analysis

### A. Basic Requirements for Criminal Liability — R.C. 2901.21

{¶ 8}   As we analyze what the state is required to prove to convict an accused of an offense, we first recognize that all conduct is innocent unless there is a statute that criminalizes it.  See R.C. 2901.03(A) ("No conduct constitutes a criminal offense against the state unless it is defined as an offense in the Revised Code").   Generally, an offense will be defined in terms of a prohibited act accompanied by a culpable mental state, the "mens rea" or guilty mind.  R.C. 2901.21 sets forth the basic requirements for criminal liability.  The statute provides:

{¶ 9}   "(A) Except as provided in division (B) of this section, a person is not guilty of an offense unless both of the following apply:

{¶ 10}  "(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;

{¶ 11}  "(2) The person has the requisite degree of culpability *for each element as to which a culpable mental state is specified by the section defining the offense.*

{¶ 12}  " * * *

{¶ 13}  "(D) As used in this section:

{¶ 14}  " * * *

{¶ 15}  "(3) 'Culpability' means purpose, knowledge, recklessness, or negligence, as defined in section 2901.22 of the Revised Code."   (Emphasis added.)

{¶ 16} Thus, every criminal offense is made up of (1) a voluntary act or failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state. R.C. 2901.21(A).

*B. The Statute that Supplies Missing Mental States — R.C. 2901.21(B)*

{¶ 17} As the emphasized portion of R.C. 2901.21(A)(2) shows, a separate mental state need not be specified for every element of an offense. And although the general rule for criminal liability requires a culpable mental state, a guilty intent is not necessary for every offense. *State v. Morello* (1959), 169 Ohio St. 213, 8 O.O.2d 192, 158 N.E.2d 525. Offenses without any culpable mental state are strict- liability offenses, and they impose liability for simply doing a prohibited act. In this type of case, ignorance of a fact or an element of the offense is not a defense. See *State v. Kelly* (1896), 54 Ohio St. 166, 43 N.E. 163.

{¶ 18} Because strict liability for an offense is the exception to the rule, the General Assembly set forth in R.C. 2901.21(B) a test that indicates whether an offense is a strict liability offense: "*When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in the section*, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense." (Emphasis added.)

{¶ 19} The first sentence of R.C. 2901.21(B) explains that an offense is a strict liability offense when the section defining the offense does not specify a mens rea and the section also plainly indicates a purpose to impose strict liability. The second sentence instructs us to impose the default mens rea of recklessness when the section defining the offense does not specify a mens rea and the section does not plainly indicate an intent to impose strict liability.

1. Previous interpretations

**{¶ 20}** Prior cases under R.C. 2901.21(B) have focused on whether the statute in question plainly indicated a purpose to impose strict liability. In some of those cases, we addressed a complete absence of a mens rea in the section defining the offense.[3] In *State v. Adams* (1980), 62 Ohio St.2d 151, 152-153, 16 O.O.3d 169, 404 N.E.2d 144, for example, we looked at child endangering, as formerly defined in R.C. 2919.22(B)(2) (now (B)(3)):

**{¶ 21}** "(B) No person shall do any of the following to a child under eighteen or a mentally or physically handicapped child under twenty-one:

**{¶ 22}** "* * *

**{¶ 23}** "(2) Administer corporal punishment or other physical disciplinary measure, or physically restrain the child in a cruel manner or for a prolonged period, which punishment, discipline, or restraint is excessive under the circumstances and creates a substantial risk of serious physical harm to the child."

**{¶ 24}** Because the General Assembly did not specify any degree of culpability and did not plainly indicate a purpose to impose strict criminal liability, we held that the state must prove recklessness.

**{¶ 25}** In another case involving the complete absence of a mens rea element, we considered the offense of robbery, a felony of the second degree, as defined in R.C. 2911.02(A)(1). *State v. Wharf* (1999), 86 Ohio St.3d 375, 715 N.E.2d 172. That statute states: "No person, in attempting or committing a theft offense or in fleeing immediately after the attempt or offense, shall* * * [h]ave a deadly weapon on or about the offender's person or under the offender's control." We stated, "Our reading of the statute leads us to conclude that the General

---

3. See *State v. Adams* (1980), 62 Ohio St.2d 151, 16 O.O.3d 169, 404 N.E.2d 144 (R.C. 2919.22(B)(2)); *State v. Parrish* (1984), 12 Ohio St.3d 123, 12 OBR 164, 465 N.E.2d 873 (R.C. 2907.25(A)); *State v. O'Brien* (1987), 30 Ohio St.3d 122, 30 OBR 436, 508 N.E.2d 144 (R.C. 2919.22(B)(3)); *State v. Young* (1988), 37 Ohio St.3d 249, 525 N.E.2d 1363 (R.C. 2907.323(A)(3)); *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975 (R.C. 2919.22(A)); *State v. Collins*, 89 Ohio St.3d 524, 733 N.E.2d 1118 (R.C. 2919.21(B)); *State v. Moody*, 104 Ohio St.3d 244, 2004-Ohio-6395, 819 N.E.2d 268 (R.C. 2919.24).

Assembly intended that a theft offense, committed while an offender was in possession or control of a deadly weapon, is robbery and no intent beyond that required for the theft offense must be proven. According to the statutory language, possession of a deadly weapon is all that is required to elevate a theft offense to robbery." Id. at 377. This court therefore held that there was a plain intent for R.C. 2911.02(A)(1) to be a strict liability offense.

{¶ 26} In a second line of cases, we analyzed offenses in which the General Assembly has specified a mens rea in one discrete clause or subsection of a section defining the offense but not in another clause or subsection.[4] R.C. 2915.03, for example, defines the offense of operating a gambling house:

{¶ 27} "(A) No person, being the owner or lessee, or having custody, control, or supervision of premises, shall:

{¶ 28} "(1) Use or occupy such premises for gambling in violation of section 2915.02 of the Revised Code;

{¶ 29} "(2) Recklessly permit such premises to be used or occupied for gambling in violation of 2915.02 of the Revised Code."

{¶ 30} Because the General Assembly specified the mental state of recklessly in subsection (A)(2) but did not specify a mens rea for subsection (A)(1), we determined that the missing mens rea in (A)(1) was a plain indication of a purpose to impose strict criminal liability for a violation of R.C. 2915.03(A)(1). *State v. Wac* (1981), 68 Ohio St.2d 84, 22 O.O.3d 299, 428 N.E.2d 428.

{¶ 31} We now conclude, however, that the plain language of R.C. 2901.21(B) does *not* cover this second line of cases in which the General

---

4. See *State v. Wac* (1981), 68 Ohio St.2d 84, 428 N.E.2d 428 (R.C. 2915.02(A)(1) and 2915.03(A)(1)); *State v. Jordan* (2000), 89 Ohio St.3d 488, 733 N.E.2d 601 (R.C. 2923.17); *State v. Maxwell*, 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242 (R.C. 2907.321(A)(6)); *State v Lozier*, 101 Ohio St.3d 161, 2004-Ohio-732, 803 N.E.2d 770 (R.C. 2925.03(C)(5)(b)); *Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000 (R.C. 2923.13(A)(3)).

Assembly has specified a mens rea in only one discrete clause or subsection of a section defining the offense, excluding another clause or subsection of the offense. R.C. 2901.21(B) requires us to examine the entire section defining the offense, not merely a clause or subsection.

2. Clarification of R.C. 2901.21(B)

{¶ 32} We recognize that discerning the General Assembly's intent to impose strict criminal liability has been fraught with difficulty. See Felicia I. Phipps, Strict Liability or Recklessness: Untangling the Web of Confusion Created by Ohio Revised Code Section 2901.21(B) (2010), 35 U.Dayton L.Rev. 199. A close reading of the statute shows the error of previous interpretation and application.

a. The mens rea of recklessness can be supplied only if the definition of the
offense as a whole is missing a mens rea element

{¶ 33} Both sentences in R.C. 2901.21(B) require that *the section* defining the offense lack *any* degree of culpability. Although R.C. 2901.21(A)(2) provides for the possibility that each element of an offense may have its own mens rea, there is no requirement that every element have one. Our statute contrasts with Section 2.02(1) of the Model Penal Code, which requires proof of culpability as to *each element* of the offense except for minor noncriminal violations punishable by fine only.

{¶ 34} R.C. 2901.21(B) requires us to examine the section defining the offense as a whole; it does not require an element-by-element analysis. R.C. 2901.21(B) offers a default rule to use when language defining an offense fails to include any culpability. Unless there is a plain indication of strict liability, recklessness is sufficient culpability for the offense. However, if the General Assembly has specified a mens rea in one part of the section defining the offense, then the requirements of R.C. 2901.21(A) have been satisfied and there is no need for analysis under R.C. 2901.21(B). R.C. 2901.21(B) was designed to apply only

when there is a complete absence of culpability in the *section* defining the offense.

{¶ 35} The 1973 Legislative Service Commission comment to 1972 Am.Sub.H.B. No. 511 supports this determination. It explains, "The first part of this section codifies the fundamental distinction between criminal conduct on the one hand and innocent conduct or accident on the other: that, generally, an offense is not committed unless a person not only does a forbidden act or fails to meet a prescribed duty, but also has a certain guilty state of mind at the time of his act or failure. The guilty state of mind, the mens rea, *may attach to one, several, or all of the elements of an offense*, and different culpable (blameworthy) mental states may attach to different elements in the same offense, depending on the statute defining the offense.

{¶ 36} "The second part of the section provides a uniform rule for determining whether culpability is required *when the statute is silent as to the offender's mental state* at the time of the offense. Although the case law is not entirely clear, the apparent rule is that *even if the statute fails to specify a degree of culpable mental state*, strict criminal liability will not be applied unless the statute plainly indicates that the legislature intended to impose strict liability. In essence, the section codifies this rule, and also provides that when an intention to impose strict liability is not apparent, recklessness is sufficient culpability to commit the offense." (Emphasis added.)

{¶ 37} In other words, the General Assembly can impose a culpable mental state on all, some, or none of the elements of an offense. Because R.C. 2901.21(B) is concerned with the offense as a whole, we should not examine whether a particular element has been assigned a culpable mental state. We look to the section defining the offense. When the General Assembly fails to include any mens rea in the section defining the offense, we apply R.C. 2901.21(B) to determine whether the offense is a strict liability offense or whether we must

impose the default mens rea of recklessness to the *offense*. But when the General Assembly chooses to specify a mens rea for each element of an offense, it is clear that R.C. 2901.21(B) does not apply.

b. The General Assembly may, but need not, attach a

specific mens rea to each element of an offense

{¶ 38} Johnson's case represents a third category of offenses, in which the General Assembly has included a mens rea for one *element* but not for the other elements in the section defining the offense. For these offenses, if the General Assembly intends for the additional elements to carry their own mens rea, it must say so. Otherwise, no culpable mental state need be proved for those elements. The dissent would adopt the approach of the Model Penal Code and, in this case, would apply "knowingly" to the element of being "under indictment for or [having] been convicted of" any drug offense. [5] Section 2.02(4) of the Model Penal Code states that when a mens rea is prescribed without distinguishing among the material elements of the offense, that mens rea applies to all the material elements. In contrast, R.C. 2901.21(A)(2) provides that a culpable mental state attaches only to the element *specified*.

{¶ 39} Our determination that R.C. 2901.21(B) applies only to those offenses for which there is a complete absence of a culpable mental state is consistent with the two-part test we created in *State v. Maxwell,* 95 Ohio St.3d 254, 2002-Ohio-2121, 767 N.E.2d 242. When deciding whether a missing mens rea must be inserted into the definition of an offense, "a court must be able to answer in the negative the following two questions before applying the element of recklessness pursuant to R.C. 2901.21(B): (1) does the section defining an offense

_____

5. Although the dissent begins by citing R.C. 2901.21(A)(2) correctly, it then reads out certain language that expressly provides that a person is not guilty of a criminal offense absent proof "of culpability for each element *as to which a culpable mental state is specified by the section defining the offense*." In focusing on every element separately, the dissent fails to understand that the General Assembly may choose *not* to specify a mens rea for every element.

specify any degree of culpability, and (2) does the section plainly indicate a purpose to impose strict criminal liability?" Id. at ¶ 21. In other words, if the section defining the offense contains a mens rea, we answer the first question "yes" and do not insert recklessness into the definition of the offense. We also do not need to determine whether the section defining the offense contains a plain indication to impose strict criminal liability.

{¶ 40} Although we recently addressed the offense of having weapons while under disability in *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000, a fresh look at R.C. 2923.13(A)(3) is necessary because our use of R.C. 2901.21(B) has been imprecise.

*C. No Additional Mens Rea Required for R.C. 2923.13(A)(3)*

{¶ 41} Johnson was charged with having weapons while under disability as defined in R.C. 2923.13(A)(3): "(A) * * * [N]o person shall *knowingly* acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply: * * * (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse * * *." (Emphasis added.)

{¶ 42} In defining the offense, the General Assembly chose to specify a culpable mental state for the element of possession of a weapon, but it did not assign an additional mens rea for the additional elements of being under indictment or having been convicted. Because R.C. 2923.13(A), which is part of the definition of the offense, already contains the mens rea of "knowingly," R.C. 2901.21(B) does not apply. We therefore need not determine whether there is a plain indication of purpose to impose strict liability for these additional elements. Furthermore, because R.C. 2901.21(B) does not apply, there is no statutory provision that allows us to insert the mens rea recklessness into the statute. As a result, for the offense of having weapons while under disability defined by R.C. 2923.13(A)(3), the state is not required to prove a culpable mental state for the

element that a defendant is under indictment for or has been convicted of any offense involving a drug of abuse.

### III. Conclusion

**{¶ 43}** For the foregoing reasons, we hold that for the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3), the state is required to prove knowing possession but is not required to prove a culpable mental state for the element that a defendant is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse.

**{¶ 44}** We therefore reverse the judgment of the court of appeals and remand for consideration of the remaining assignments of error.

Judgment reversed

and cause remanded.

PFEIFER, LUNDBERG STRATTON, O'CONNOR, and CUPP, JJ., concur.

O'DONNELL, J., concurs in judgment only.

BROWN, C.J., dissents.

_____

**BROWN, C.J., dissenting.**

**{¶ 45}** R.C. 2901.21(A)(2) expressly provides that a person is not guilty of a criminal offense absent proof "of *culpability for each element* as to which a culpable mental state is specified by the *section* defining the offense." (Emphasis added.) Directly contrary to this statutory mandate, the majority determines that where the General Assembly "has included a mens rea for one *element* but not for the other elements in the section defining the offense," no culpable mental state will be required for the latter elements. (Emphasis sic.) Majority opinion, ¶ 38. The majority concludes that "[f]or these offenses, if the General Assembly intends for the additional elements to carry their own mens rea, it must say so." Id. I fear

that this holding of potentially breathtaking scope will produce untold confusion and litigation as prosecutors, defense counsel, and courts struggle to apply it.[6]

{¶ 46} R.C. 2901.21(B) establishes rules for determining the required degree of culpability (or mens rea), if any, where a section of the criminal code fails to specify mens rea. The majority states that R.C. 2901.21(B) does not apply to prosecutions for violations of the criminal code in which "the General Assembly has specified a mens rea in only one discrete clause or subsection of a section defining the offense," but not in another discrete clause or subsection. Majority opinion at ¶ 31. The majority includes R.C. 2923.23(A)(3), the statute forbidding having weapons while under a disability ("WUD"), in this category of cases. I agree.

{¶ 47} I disagree, however, with the next analytical step taken by the majority. Having found that R.C. 2901.21(B) does not apply to a WUD offense, the majority determines that the express degree of culpability specified by the General Assembly for conviction of a WUD offense ("knowingly") applies only to the element of possessing weapons and not to the remainder of elements set forth in the WUD statute. The majority concludes that strict liability may be imposed as to some elements of a statutorily defined offense, despite the express inclusion of a required state of culpability in another "discrete clause or subsection of a section defining the offense." Id.

---

6. {¶ a} By way of example, consider R.C. 2913.02(A), which establishes the crime of theft by providing:

{¶ b} "No person, with purpose to deprive the owner of property or services, shall *knowingly obtain or exert control over either the property or services* in any of the following ways:

{¶ c} "(1) Without the consent of the owner or person authorized to give consent." (Emphasis added.)

{¶ d} Presumably, because no culpability requirement is expressly stated as to the subsection (A)(1) element of the crime, the majority would allow conviction for theft even in the absence of proof that the alleged offender knew or was reckless or negligent as to whether he or she lacked the consent of the owner to use the property. Teenaged drivers throughout Ohio might well henceforth beware of using the family car.

**{¶ 48}** R.C. 2901.21(A)(2) establishes that a person is not guilty of a criminal offense absent proof "of *culpability for each element* as to which a culpable mental state is specified by the *section* defining the offense" (emphasis added)—not a statutory subsection or subdivision or "discrete clause" contained in the section defining the offense. The general rule established in R.C. 2901.21(A)(2) applies, by the express language of the statute, where the General Assembly has included a required degree of culpability within a section of the code defining a criminal offense. As to those offenses, the strict-liability fallback rules of R.C. 2901.21(B) are irrelevant. Accordingly, in my view, and consistent with R.C. 2901.21(A)(2), conviction of a WUD offense should be dependent upon proof of the required degree of culpability ("knowingly") for "each element" of that offense, i.e., both (1) possession of a weapon and (2) the fact that created the disability to the carrying of a weapon, e.g., conviction of certain drug offenses (as in the case at bar) or indictment for certain drug offenses (as in *State v. Clay*, 120 Ohio St.3d 528, 2008-Ohio-6325, 900 N.E.2d 1000). The first clause of R.C. 2901.21(A) requires that a person charged with a criminal offense have the requisite degree of culpability for each element of the offense. The culpable mental state specified for a WUD conviction under R.C. 2923.13(A)(3) is "knowingly," and "knowingly" is thus the culpable mental state "specified by the section defining the [WUD] offense."

**{¶ 49}** Nothing in the text of the WUD statute justifies the conclusion that the General Assembly's legislative drafting choice not to expressly repeat the word "knowingly" in subsection (A)(3) reflects a legislative determination that no culpability requirement exists as to the subsection (A)(3) element. Indeed, the contrary inference should be drawn in accordance with generally accepted principles of criminal law. See, for example, the dictionary definition of culpability stated in Black's Law Dictionary (9th Ed.2009) 435: "Except in cases of absolute liability, criminal culpability requires a showing that the person acted

purposely, knowingly, recklessly or negligently *with respect to each material element of the offense."* (Emphasis added.) In contrast, in *Clay*, this court determined that "recklessly" rather than "knowingly" was the degree of culpability required to be proved as to the defendant's status of being under indictment. That is, the court held that in order to obtain a conviction of the WUD offense established in R.C. 2923.13(A)(3) the state was required to prove the mens rea element of recklessness as to the defendant's awareness that he had been indicted. Had I been a member of the court in 2008, when *State v. Clay* was decided, I would have taken the position that the correct answer to the question certified to the court[7] was as follows: *Knowledge* of the pending indictment is required for a conviction for having a weapon while under disability pursuant to R.C. 2923.13(A)(3) when the disability is based on a pending indictment. But the court in *Clay* held otherwise. I recognize that *Clay* is a case decided barely two years ago, and I acknowledge its status as controlling precedent.

{¶ 50} The court of appeals did not find it difficult to apply *Clay* to the case at bar, nor should it have. The General Assembly has expressly provided that proof that an accused acted "knowingly" also constitutes proof that the defendant acted "recklessly." R.C. 2901.22(E) ("When recklessness suffices to establish an element of an offense, then knowledge or purpose is also sufficient culpability for such element"). Thus, in accordance with *Clay*, the state in the case at bar could have proved the culpable mental state of recklessness required for a WUD conviction by demonstrating that Johnson actually knew, or was at least reckless in not knowing, at the time of possessing the weapon, that he had been previously convicted of a drug-abuse charge. The state would have had little difficulty in proving this fact in its prosecution of Johnson—its burden could have

---

7. In *Clay*, the 8th District Court of Appeals had certified the following issue to this court: "Whether knowledge of the pending indictment is required for a conviction for having a weapon while under disability pursuant to R.C. 2923.13(A)(3) when the disability is based on a pending indictment."

been satisfied by the production of proof that the defendant knew that he had been convicted of a drug-abuse charge. The prosecutor needed only to introduce evidence from the record of the earlier criminal proceedings—Johnson undoubtedly was told during the sentencing process after conviction of the drug offenses that he had been found guilty of drug offenses.

{¶ 51} Contrary to the suggestion of the state, the court of appeals in the case at bar did not require the state to prove that the defendant was reckless in not knowing *the legal consequences of being under indictment*. Nowhere in its opinion did the court of appeals suggest that the state was required to prove that the defendant knew that the fact that he was under indictment meant that he could not legally carry a weapon. Nor does this court's opinion in *Clay* imply that requirement. The effect of *Clay* was that the state in WUD prosecutions must prove that if the defendant did not actually know he was under indictment or had been convicted of a drug offense, he was at least reckless in not knowing that fact at the time he possessed the weapon. Nothing in *Clay* warrants the conclusion that the state must prove additionally that a person charged with a WUD offense knew, or was reckless in not knowing, that a legal consequence of an indictment or conviction was that he or she was prohibited by law from possessing a weapon. To do so would contradict the well-established principle that ignorance of the law is no excuse.

{¶ 52} I do not believe that *Clay* can be logically distinguished from the case at bar. Johnson was convicted of R.C. 2923.13(A)(3) just as Clay was—even though the disability in *Clay* resulted from an *indictment* for drug offenses and the disability in *Johnson* resulted from *convictions* of drug offenses. Thus, the factual underpinnings of the case at bar differ from the facts in *Clay* only in that, in this case, Johnson had not only been indicted but had also been convicted of the drug offense. I believe that these two circumstances present a distinction without a difference for purposes of legal analysis of the culpability requirements

16

for a WUD conviction and that attempts to rationally distinguish *Clay* from the case before us are futile.

{¶ 53} In my view, the court of appeals correctly applied *Clay.* I do not believe that adequate justification existed for this court to accept the case at bar for review. I would therefore dismiss the state's appeal in this case as having been improvidently accepted. There not being a majority of votes in favor of that disposition, it is my opinion that the judgment of the court of appeals should be affirmed. I therefore respectfully dissent.

_____

William D. Mason, Cuyahoga County Prosecuting Attorney, and Thorin Freeman and Daniel Van, Assistant Prosecuting Attorneys, for appellant.

Robert L. Tobik, Cuyahoga County Public Defender, and John T. Martin, Assistant Public Defender, for appellee.

D. Timothy Huey, urging affirmance for amicus curiae, Ohio Association of Criminal Defense Lawyers.

_____