Kennedy, J., dissenting.
{¶ 69} The lead opinion wants it both ways, arguing that the state bears the burden to prove beyond a reasonable doubt that the accused committed the offense of felonious assault with a voluntary act while the accused bears the burden of proving by a preponderance of the evidence and as an affirmative defense that the same act was involuntary because the accused lacked consciousness. The proper analysis, however, begins and ends with the elements of the offense: once it is determined that voluntariness-and therefore consciousness-is an element of felonious assault, the state retains the burden of proving it beyond a reasonable doubt regardless of whether lack of consciousness is characterized-or asserted-as a "blackout" defense. Because such a defense asserts that the state has failed to prove an element of the offense, it can never be an affirmative defense.
{¶ 70} Pursuant to R.C. 2901.21(A), a conscious, voluntary act is an element of every offense in Ohio; the state bears the burden of proving that element beyond a reasonable doubt, and the burden of proof remains with the state throughout the trial. Any contrary evidence presented by the accused relating to a lack of consciousness or a blackout defense does not assert an affirmative defense on which the accused bears the burden of proof but rather is presented to persuade the jury that the state has not carried its burden of proving guilt beyond a *304 reasonable doubt in the first place. Blackout is a failure-of-proof defense, not an affirmative defense.
{¶ 71} Because any contrary analysis runs counter to the plain language of the *301 statute and confuses established constitutional principles, I dissent.
R.C. 2901.21 : The Voluntary-Act Element
{¶ 72} The common-law concept of crime as the "concurrence of an evil-meaning mind with an evil-doing hand * * * took deep and early root in American soil." Morissette v. United States , 342 U.S. 246, 251-252, 72 S.Ct. 240, 96 L.Ed. 288 (1952) ; see also United States v. Apfelbaum , 445 U.S. 115, 131, 100 S.Ct. 948, 63 L.Ed.2d 250 (1980) ("In the criminal law, both a culpable mens rea and a criminal actus reus are generally required for an offense to occur"). Although Ohio has abolished common-law crimes, R.C. 2901.03(A), it nonetheless has codified this common-law rule that both a culpable mental state and a criminal act are generally required for an offense to occur, R.C. 2901.21(A).
{¶ 73} R.C. 2901.21(A) provides:
Except as provided in division (B) of this section [pertaining to strict-liability offenses, for which culpability is not required], a person is not guilty of an offense unless both of the following apply:
(1) The person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing;
(2) The person has the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense.
And R.C. 2901.21(F)(2) clarifies that "[r]eflexes, convulsions, body movements during unconsciousness or sleep, and body movements that are not otherwise a product of the actor's volition, are involuntary acts." (Emphasis added.)
{¶ 74} We have explained that " R.C. 2901.21 sets forth the basic requirements for criminal liability," so that in Ohio, "an offense [is] defined in terms of a prohibited act accompanied by a culpable mental state." State v. Johnson , 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, ¶ 8. That is, "every criminal offense is made up of (1) a voluntary act or failure to act when there is a duty and (2) a culpable mental state for each element that specifies a mental state." Id. at ¶ 16.
{¶ 75} Accordingly, in State v. Nucklos , we noted that "the state must prove that the accused engaged in 'a voluntary act, or an omission to perform an act or *305 duty that the person is capable of performing,' with the 'requisite degree of culpability' for each element of the alleged offense in order to obtain a conviction." 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, ¶ 6, quoting R.C. 2901.21(A). These " 'material elements' " of the crime must be proved beyond a reasonable doubt. Id. , quoting State v. Manley , 71 Ohio St.3d 342, 346, 643 N.E.2d 1107 (1994).
{¶ 76} Accordingly, in this case, appellant, the state of Ohio, had the burden to prove that appellee, Darin Ireland, committed felonious assault with a voluntary act. The General Assembly has expressly provided that body movements that are made during unconsciousness or that are not a product of the actor's volition are not voluntary acts. R.C. 2901.21(F)(2).
{¶ 77} Here, Ireland asserted that the state could not prove the voluntary-act element, and he presented Dr. James Reardon's expert testimony that Ireland suffered from posttraumatic stress disorder resulting from his combat experience in the Persian Gulf War. Dr. Reardon testified that throughout the hostilities, Ireland witnessed the carnage of war, including *302 "numerous helicopters crashing and burning"-and "he could have just as easily been on those helicopters." Once, Ireland's unit came under fire, and when Iraqi soldiers advanced on his position, Ireland fired a grenade launcher at them and "silenced everything." In securing his unit's position, he found numerous dead Iraqi soldiers but also discovered the bodies of two Americans who had been taken prisoner and whom he may have killed with the grenade. While Ireland was checking the bodies, an Iraqi soldier suddenly "pulled a knife out and stabbed at [Ireland], nicked him in the ribs. [Ireland] pulled his bayonet out and stabbed the guy and killed him." Ireland was awarded the Bronze Star for heroism, but since then, he has suffered flashbacks, blackouts, intrusive dreams, and intense psychological distress. For example, in one episode, Ireland "thought he was in a fight, thought he was in combat, and stabbed a wall" before regaining consciousness.
{¶ 78} Dr. Reardon evaluated Ireland and diagnosed him with posttraumatic stress disorder caused by Ireland's experiences in the war. According to Dr. Reardon, when Ireland attacked the victim in this case, Ireland was experiencing a dissociative episode caused by his disorder. Dissociative phenomena, Dr. Reardon explained, range from "a full-blown flashback-feeling like they're back, if it's a veteran, in the middle of a combat situation even though they're in a traffic jam in downtown Columbus" to professional athletes who "can just blank out everything else" to a phenomenon called "highway hypnosis, where you're in the car and you're driving and you're driving, and you realize that you've gone from here to there, but you don't remember much of anything in between." Similarly, Dr. Reardon opined that Ireland's attack on the victim was "not a volitional experience" but, rather, "almost like a knee-jerk reaction," Ireland was *306 "acting automatically in a dissociative episode." According to Dr. Reardon, the attack was "not a manifestation of conscious thought or awareness" and Ireland could not control his behavior when experiencing a "dissociative blackout" because "it's not a product of [his] consciousness and decision making"-"[t]here's no consciousness." Rather, Ireland was reacting "in a habitually, conditioned manner."
{¶ 79} Ireland's defense therefore was that the state had not proved that he committed a conscious, voluntary act. This conclusion is not only required by the plain language of R.C. 2901.21(A), which makes a conscious, voluntary act an element of the offense, but also is consistent with the majority rule in this country that blackout or unconsciousness is a failure-of-proof defense, meaning that it asserts that the state has not proved the voluntary-act element beyond a reasonable doubt, 2 LaFave, Substantive Criminal Law , Section 9.1(a)(1) (3d Ed.2018) ; see, e.g. , Palmer v. State , 379 P.3d 981, 989 (Alaska App.2016) ; Hale v. State , 191 So.3d 719, ¶ 12 (Miss.2016) ; United States v. Torres , 74 M.J. 154, 158 (C.A.A.F.2015) ; State v. Newman , 353 Or. 632, 647, 302 P.3d 435 (2013) ; Missoula v. Paffhausen , 2012 MT 265, 367 Mont. 80, 289 P.3d 141, ¶ 37 ; Smith v. State , 284 Ga. 33, 34-35, 663 S.E.2d 155 (2008) ; State v. Kupihea , 98 Hawai'i 196, 202, 46 P.3d 498 (2002), fn. 9 ; McClain v. State , 678 N.E.2d 104, 107 (Ind.1997) ; State v. Hinkle , 200 W.Va. 280, 286, 489 S.E.2d 257 (1996) ; People v. Babbitt , 45 Cal.3d 660, 696, 248 Cal.Rptr. 69, 755 P.2d 253 (1988) ; Virgin Islands v. Smith , 278 F.2d 169, 173 (3d Cir.1960). But see, e.g. , State v. Deer , 175 Wash.2d 725, 287 P.3d 539, ¶ 10-12, 21 (2012) (holding that consciousness is not an element of the strict-liability offense of *303 rape of a child and that lack of consciousness is an affirmative defense).
{¶ 80} R.C. 2901.21(A), our caselaw, and the weight of authority show that a conscious, voluntary act is an element of the felonious-assault offense charged in this case. The lead opinion itself admits that "the state is required to present evidence that the defendant committed the criminal act voluntarily," yet it claims that a voluntary act is not an "essential element" of the offense. Lead opinion at ¶ 33. However, it fails to explain why labeling an element "essential" means anything in these circumstances.
{¶ 81} " 'Elements' are the 'constituent parts' of a crime's legal definition-the things the 'prosecution must prove to sustain a conviction.' " Mathis v. United States , --- U.S. ----, 136 S.Ct. 2243, 2248, 195 L.Ed.2d 604 (2016), quoting Black's Law Dictionary 634 (10th Ed.2014). Elements are "what the jury must find beyond a reasonable doubt to convict the defendant." Id. The lead opinion agrees (1) that the state has the burden to prove that the accused committed a voluntary act and (2) that body movements during unconsciousness are involuntary *307 acts. It necessarily follows that a conscious, voluntary act is an element of the offense.
{¶ 82} The lead opinion, however, asserts that the General Assembly chose not to include voluntariness in R.C. 2903.11(A). Lead opinion at ¶ 39. But it did not include any specific actus reus in that statute either, and it did not have to, because pursuant to R.C. 2901.21(A)(1), "every criminal offense is made up of * * * a voluntary act or failure to act when there is a duty," Johnson , 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, at ¶ 8. And although R.C. 2901.21(A)(2) contemplates that there are strict-liability crimes, so that criminal liability depends on the accused's having "the requisite degree of culpability for each element as to which a culpable mental state is specified by the language defining the offense," the plain language of R.C. 2901.21(A)(1) recognizes that Ohio law does not impose strict liability for involuntary acts. Rather, criminal liability requires "conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing." R.C. 2901.21(A)(1). The lead opinion therefore disregards the plain language of the statute when it countenances strict liability for a felonious assault committed by an unconscious, involuntary body movement.
{¶ 83} The lead opinion states that "a challenge to voluntariness is a defense." Lead opinion at ¶ 33. But that is a distinction without a difference, because challenging the sufficiency of the evidence presented at trial is always a defense. Presenting an alibi, attacking an eyewitness identification, and disputing the existence of the applicable mens rea are all defenses, yet the identity of the accused or the existence of the requisite degree of culpability are nevertheless elements. The same is true when the accused asserts that the state cannot prove beyond a reasonable doubt that criminal liability is based on a conscious, voluntary act.
R.C. 2901.05(D)(1) : Affirmative Defenses
{¶ 84} "Affirmative defense" is defined by statute as either a "defense expressly designated as affirmative," R.C. 2901.05(D)(1)(a), or a "defense involving an excuse or justification peculiarly within the knowledge of the accused, on which the accused can fairly be required to adduce supporting evidence," R.C. 2901.05(D)(1)(b). The accused has the burden of presenting evidence of an affirmative defense as well as the burden of proving it by a preponderance of the evidence.
*304 Nucklos , 121 Ohio St.3d 332, 2009-Ohio-792, 904 N.E.2d 512, at ¶ 7, citing R.C. 2901.05(A).
{¶ 85} Contrary to the lead opinion's claim, a blackout defense does not assert an excuse or justification. The definition of "excuse" relevant to criminal law is a "defense that arises because the defendant is not blameworthy for having acted in a way that would otherwise be criminal ." (Emphasis added.) Black's Law *308 Dictionary at 688. And the relevant definition of "justification" is a "showing, in court, of a sufficient reason why a defendant acted in a way that, in the absence of the reason, would constitute the offense with which the defendant is charged." (Emphasis added.) Id. at 997. As both of these definitions indicate, excuse and justification defenses "apply in the case of a particular offense even though all of the elements of that offense are fully established." 2 LaFave, Substantive Criminal Law , Section 9.1(a)(4), at 7. Neither type of defense seeks to negate an element of the crime; rather, both assert that although the state can prove each element of the offense, criminal liability should not attach because the accused is not blameworthy. We have therefore recognized that affirmative defenses
"represent not a mere denial or contradiction of evidence which the prosecution has offered as proof of an essential element of the crime charged, but, rather * * * represent a substantive or independent matter 'which the defendant claims exempts him from liability even if it is conceded that the facts claimed by the prosecution are true.' "
(Ellipsis sic.) State v. Humphries , 51 Ohio St.2d 95, 99, 364 N.E.2d 1354 (1977), quoting State v. Poole , 33 Ohio St.2d 18, 19, 294 N.E.2d 888 (1973), quoting Anderson, 1 Wharton's Criminal Evidence , Section 19, at 54 and 55 (12th Ed.1955).
{¶ 86} In contrast, a blackout defense attempts to negate the conscious, voluntary-act element of the offense, and the issue at trial in this case was whether the state proved that Ireland consciously and voluntarily caused that harm-an element that Ireland did not concede by asserting his defense.
{¶ 87} Further, the fact that whether the accused suffered a blackout is peculiarly within the accused's knowledge does not, by itself, make blackout an affirmative defense. Other matters are peculiarly within the knowledge of the accused-such as the accused's mental state-but are not affirmative defenses. See, e.g. , Mullaney v. Wilbur , 421 U.S. 684, 702, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) ("And although intent is typically considered a fact peculiarly within the knowledge of the defendant, this does not, as the Court has long recognized, justify shifting the burden to him"). This is true even though the accused bears the burden of going forward with evidence raising an issue that the act was not voluntary. See Davis v. United States , 160 U.S. 469, 486, 16 S.Ct. 353, 40 L.Ed. 499 (1895).
{¶ 88} Lastly, even if the blackout defense did fit R.C. 2901.05(D)(1)(b)'s definition of an affirmative defense, the Due Process Clause of the United States Constitution nonetheless prohibits the state from shifting the burden of proof to the accused when an affirmative defense negates an element of the crime.
*309 Smith v. United States , 568 U.S. 106, 110, 133 S.Ct. 714, 184 L.Ed.2d 570 (2013) ; see generally 1 LaFave, Substantive Criminal Law , Section 1.8(c). As Justice Scalia explained in Smith ,
[t]he State is foreclosed from shifting the burden of proof to the defendant *305 only "when an affirmative defense does negate an element of the crime." Martin v. Ohio , 480 U.S. 228, 237, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987) (Powell, J., dissenting). Where instead it "excuse[s] conduct that would otherwise be punishable," but "does not controvert any of the elements of the offense itself," the Government has no constitutional duty to overcome the defense beyond a reasonable doubt. Dixon v. United States, 548 U.S. 1, 6, 126 S.Ct. 2437, 165 L.Ed.2d 299 (2006).
(Emphasis sic.) Smith at 110, 133 S.Ct. 714.
{¶ 89} The lead opinion, however, asserts that "a state does not violate the Due Process Clause by requiring the defendant to prove an affirmative defense by a preponderance of the evidence, even when the evidence used to prove the affirmative defense might also negate an element of the offense at issue." Lead opinion at ¶ 40. But the decisions cited in support of this proposition are taken out of context.
{¶ 90} In Leland v. Oregon , 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952), the accused had argued that requiring him to establish an insanity defense beyond a reasonable doubt violated his right to due process. But importantly, "Oregon required the prosecutor to prove beyond a reasonable doubt every element of the offense charged." Id. at 799, 72 S.Ct. 1002. The accused's sanity was not an element of the offense, and the state had not required the accused to negate it. (Similarly, Ohio law provides that sanity is not an element of an offense, which is why insanity is an affirmative defense. See State v. Hancock , 108 Ohio St.3d 57, 2006-Ohio-160, 840 N.E.2d 1032, ¶ 35.)
{¶ 91} When the United States Supreme Court in Patterson v. New York , 432 U.S. 197, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977), held that New York had not violated the federal Due Process Clause by requiring the accused to prove the affirmative defense of extreme emotional disturbance to reduce second-degree murder to manslaughter, the court expressly stated that placing that burden on the accused "does not serve to negative any facts of the crime which the State is to prove in order to convict of murder," id. at 207, 97 S.Ct. 2319.
{¶ 92} And in Martin , 480 U.S. at 233, 107 S.Ct. 1098, 94 L.Ed.2d 267, the Supreme Court held that the state of Ohio had not shifted the burden of proving the elements of aggravated murder when it required the accused to prove that she had acted in self-defense. Again, the state had not defined the crime as a *310 killing without justification, and the absence of self-defense was not an element of the offense that the state was required to prove.
{¶ 93} Here, in contrast to these cases, the General Assembly has decided that the state bears the burden to prove that the accused committed the offense with a conscious, voluntary act. Therefore, the lead opinion's recognition that the state must prove a voluntary act should end the analysis, and its analysis shifting the burden to the accused to prove lack of consciousness as a purported affirmative defense when the evidence used to prove it "might also negate an element of the offense at issue," lead opinion at ¶ 40, shows that the lead opinion confuses the blackout defense-which does negate the voluntary-act element-with the persuasiveness of the evidence presented to prove it.
{¶ 94} Ireland's blackout defense sought to negate the voluntary-act element of felonious assault, and if the jury had found that he acted while unconscious, it would *306 have had to acquit him and he would not have needed to prove an additional excuse or justification to avoid criminal liability.
{¶ 95} "Jury instructions that effectively relieve the state of its burden of persuasion violate a defendant's due process rights," State v. Adams , 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 97, citing Sandstrom v. Montana , 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), and subvert the presumption of innocence and the right to have a jury determine the facts of a case, Carella v. California , 491 U.S. 263, 265, 109 S.Ct. 2419, 105 L.Ed.2d 218 (1989).
{¶ 96} But here, the jury instructions placed the burden of proving the same fact-consciousness-on both the state and the accused. Over Ireland's objection, the trial court gave the following instructions:
The burden of going forward with the evidence of blackout and the burden of proving an affirmative defense is upon the defendant. He must establish such a defense by a preponderance of the evidence.
* * *
If the defendant fails to establish the defense of blackout, the State still must prove to you beyond a reasonable doubt all the elements of the crime charged.
Where a person commits an act while [unconscious], as in a coma, blackout, or convulsion due to heart failure, disease, sleep, or injury, such an act is not a criminal offense even though it would be a crime if such act were the product of a person's will or volition.
If you have a reasonable doubt whether the defendant was conscious at the time of such act, you must find that he is not guilty. If you find that the defendant was conscious, such finding does not relieve the State of its *311 burden of establishing by the required weight of the testimony that the act was knowingly committed.
* * *
Reflexes, convulsions, body movements during unconsciousness or sleep and body movements that are not otherwise a product of the act's [sic, actor's] will or volition are involuntary acts.
{¶ 97} These instructions told the jury that "blackout"-i.e., a lack of consciousness-is an affirmative defense that must be proved by the accused and that consciousness is an element of the offense that the state has the burden to establish by proof beyond a reasonable doubt. The instructions not only confused the jury but also shifted the burden to Ireland to disprove that he acted voluntarily-in violation of his right to due process. Contrary to the lead opinion's analysis, the presumption that jurors follow instructions cannot be applied when the jurors receive such countervailing, confusing, and internally inconsistent instructions, and it is telling that the state has not attempted to show that the instructions amount only to harmless error.
Conclusion
{¶ 98} The state has authority to regulate procedures in criminal cases, including the allocation of the burden of producing evidence and the burden of persuasion, Medina v. California , 505 U.S. 437, 445, 112 S.Ct. 2572, 120 L.Ed.2d 353 (1992), and "a state rule of criminal procedure not governed by a specific rule set out in the Bill of Rights violates the Due Process Clause of the Fourteenth Amendment only if it offends a fundamental and deeply rooted principle of justice,"
*307 Nelson v. Colorado , --- U.S. ----, 137 S.Ct. 1249, 1258, 197 L.Ed.2d 611 (2017) (Alito, J., concurring in the judgment).
{¶ 99} But once the General Assembly has provided that a conscious, voluntary act is an element of every crime, the prosecution has the burden of proving it beyond a reasonable doubt. Due process forecloses the state from shifting the burden to the accused to disprove that he or she committed the offense consciously and voluntarily. The lead opinion's determination today that Ireland bore the burden of persuading the jury that he committed felonious assault while unconscious and in a state of blackout therefore contravenes due process and the deeply rooted principle of justice that the accused retains the presumption of innocence unless and until the state satisfies its burden of proof on all elements of the charged offense.
{¶ 100} Accordingly, I would affirm the judgment of the Tenth District Court of Appeals, hold that a blackout defense is not an affirmative defense but rather *312 serves to negate the voluntary-act element of an offense pursuant to R.C. 2901.21(A)(1), and remand the matter to the trial court for a new trial.
DeWine, J., concurs in the foregoing opinion.