JOURNAL ENTRY and OPINION
{¶ 1} Defendant Steve Halczysak appeals from his conviction for theft. For the reason set forth below, we affirm.
 {¶ 2} On May 16, 2005, defendant was indicted pursuant to a two-count indictment for theft of a motor vehicle and theft of money belonging to Tatiana Sekanic. Defendant pled not guilty and the matter proceeded to a jury trial on July 20, 2005.
 {¶ 3} For its case, the state presented the testimony of Sekanic, Mykola Shunevich, Charles Black, Kenneth Germane and Cleveland Police Det. Gregory Cook.
 {¶ 4} Sekanic testified that she came to the United States in 1993 from Ukraine. She purchased a 1994 Dodge Colt car from Mykola Shunevich in June 2002. The car had engine problems and Shunevich agreed that she could have the car for $100 because it needed a new transmission. Sekanic received Shunevich's title at the time of purchase and the title transfer was notarized on June 6, 2002. Sekanic did not immediately re-title the car into her name because she had to return to Ukraine, and because she did not believe that the car would pass the required E-Check emissions test prior to being repaired.
 {¶ 5} A friend suggested that Sekanic bring the car to defendant for the repair. Defendant told Sekanic that the car may need a new transmission and that it would cost $1,100 to repair, with $700 down. The car did not need any other work. Sekanic agreed and gave defendant's associate, Donna, $500 in cash plus a check for $200 and received a receipt from Forest City Used Cars for this partial payment.
 {¶ 6} Defendant picked up the car on October 3, 2002, and told Sekanic that it would take a couple of months to complete the repair. After such time had elapsed, Sekanic began to call defendant and leave messages on his answering machine but he did not return her calls. Sekanic also enlisted the help of Maya Spaqui and Evon Drobnik, two individuals who also knew defendant, but did not receive any response from defendant.
 {¶ 7} In January 2005, she observed someone else driving the car near the area of West 25th Street and Archwood, and she subsequently filed a police report.
 {¶ 8} Mykola Shunevich testified that he came to the Unites States in 1997 from Ukraine. He sold a car to Sekanic and told her that it needed a new transmission. Title was transferred to her and was notarized, but his license plates remained on the car. Shunevich acknowledged that the car needed other repairs. In November 2004, Shunevich saw the car parked in Biddolph Plaza then called Sekanic.
 {¶ 9} With regard to an Application for a Duplicate Certificate of Title in the name of Mykola Shunevich, and dated May 29, 2003, Shunevich denied signing this document and denied that it contained his signature. This document indicated that the vehicle was in the possession of Blackie's Auto. Shunevich testified that he does not know defendant and has never met him and has never gone to Blackie's Auto.
 {¶ 10} Charles Black testified that he is the owner of Blackie's Service Station located on State Road. In May 2003, defendant contacted him about installing a transmission in a vehicle. Defendant provided a replacement transmission but, according to Black, it did not work properly. Defendant then indicated that he would speak to the owner of the car and try to find a second replacement transmission. According to Black it took a long time to find another transmission and the car remained at the shop for approximately five months. Eventually, defendant inquired about having the original transmission rebuilt and Black indicated that it would cost $1,000. Defendant indicated that he needed to speak with the owner, and the two never reached a firm agreement about the job. Black then attempted to contact defendant a number of times but was unsuccessful. Black eventually had the vehicle impounded by Webb's Towing.
 {¶ 11} Kenneth Germane testified that he is the president of Impression Tool Mold Co. on Brookpark Road, and that defendant has a car lot on the front of his property.
 {¶ 12} Cleveland Police Det. Gregory Cook testified that he performed a title search to determine whether defendant had filed an affidavit for an Unclaimed Motor Vehicle, which can be used when mechanics and customers have a pay dispute. According to Det. Cook, no such affidavit was filed in this instance. Det. Cook then performed a title search, spoke to Shunevich and took handwriting exemplars from him. He also spoke to Black, and learned that Webb's Towing had filed an Unclaimed Motor Vehicle Affidavit. Webb's obtained title to the vehicle in July 2004, and the vehicle was later conveyed to two other people.
 {¶ 13} Det. Cook also learned that in May 2003, a fraudulent title for the car had been obtained in the name of Mykola Shunevich. This document, purportedly notarized by Cheryl Sheets, indicated that the original certificate of title had been lost. The spurious title in effect cancelled the transfer to Sekanic and put it back into Shunevich's name. The car was then transferred again. Det. Cook took handwriting exemplars and eliminated Shunevich as a suspect in creating the fraudulent title. He also eliminated Sherman Webb of Webb's Towing and did not believe that defendant was involved in this activity.
 {¶ 14} The vehicle was driven approximately 15,000 miles after it was transferred from Shunevich to Sekanic.
 {¶ 15} The trial court subsequently acquitted defendant of the charge of theft of a motor vehicle, as alleged in Count One.
 {¶ 16} Defendant elected to present evidence and testified on his own behalf. According to defendant, Sekanic's car needed work on the transmission as well as numerous other items. Defendant stated that he performed extensive work on the car, and that he replaced the brakes, rotors, bearings, wiring harness, and other items. He then took it to Blackie's for the transmission work. Defendant testified that he was to provide the transmission and that Black was to perform the labor for $300.
 {¶ 17} Defendant testified that Sekanic agreed to the arrangement but never gave him full payment for the repairs. He repeatedly tried to contact her but she did not return his calls and the vehicle remained at Blackie's Auto until Black had it towed away. On cross-examination he claimed that, although the car was not worth much, Sekanic wanted him to perform all of the repairs that he listed, in addition to the transmission work, the sole item listed on Sekanic's receipt. Defendant claimed that Sekanic "made the wrong decision" in deciding to spend so much on car repairs, then ultimately abandoned the car.
 {¶ 18} Defendant was subsequently convicted of theft, as alleged in Count Two, and sentenced to one year of community control sanctions. He now appeals and assigns four errors for our review.
 {¶ 19} Defendant's first assignment of error states:
 {¶ 20} "Defendant was denied due process of law when the court allowed defendant's conviction for theft to stand."
 {¶ 21} Within this assignment of error, defendant asserts that there was insufficient evidence to establish the offense of theft.
 {¶ 22} "`Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541. An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 23} As is relevant to this matter, the elements of theft are set forth in R.C. 2913.02 as follows:
 {¶ 24} "(A) No person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services in any of the following ways:
 {¶ 25} "* * *
 {¶ 26} "(2) Beyond the scope of the express or implied consent of the owner or person authorized to give consent[.]"
 {¶ 27} In this matter, the state presented evidence that Sekanic purchased the car from Shunevich and that the purchase price was $100. Sekanic contacted defendant about repairing the transmission. The receipt did not list any other items. Defendant then received the car in order to repair the transmission, and Sekanic gave him $700 in partial payment. Although defendant spoke with Black about the repair, the state's evidence indicated that defendant ultimately failed to find a transmission for the vehicle, did not return Sekanic's money and failed to return her calls. The vehicle was ultimately impounded. From this evidence, a reasonable jury could conclude that defendant committed the offense of theft by obtaining and keeping Sekanic's money for the repair without performing the job. The conviction is supported by sufficient evidence.
 {¶ 28} This assignment of error is without merit.
 {¶ 29} Defendant's second assignment of error states:
 {¶ 30} "Defendant was denied due process of law when the court overruled his motions for judgment of acquittal as the verdicts of the jury [are] against the manifest weight of the evidence."
 {¶ 31} Defendant next contends that his conviction is against the manifest weight of the evidence.
 {¶ 32} In State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541, the court illuminated its test for manifest weight of the evidence as follows:
 {¶ 33} "Weight of the evidence concerns `the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other.' It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." Black's [Law Dictionary (6 Ed. 1990)], at 1594.
 {¶ 34} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "`thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. Id., citing Tibbs v. Florida (1982), 457 U.S. 31,45, 102 S.Ct. 2211, 2220, 72 L.Ed.2d 652, 663. The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. See State v. Martin (1983), 20 Ohio App.3d 172, 175,485 N.E.2d 717, 720-721.
 {¶ 35} The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction. Id.
 {¶ 36} In this matter, we cannot conclude that the jury lost its way in convicting the defendant of theft, and we cannot conclude that the conviction is against the manifest weight of the evidence. Shunevich established that the vehicle needed transmission work. Sekanic complained that the vehicle would go no faster than 25 m.p.h. and that she contacted defendant about repairing the transmission. Sekanic's receipt lists "transmission repair." Defendant told her that the repair would take several months and he spoke to Black about repairing the car, but defendant failed to provided the part for the car and would not return Sekanic's or Black's calls, yet he kept Sekanic's money.
 {¶ 37} Defendant claimed that Sekanic wanted him to perform many other repairs not listed on the receipt and that this work, plus the expensive transmission work were the "wrong choice" that Sekanic made. He claimed that it was Sekanic, and not he who ultimately abandoned the car.
 {¶ 38} The state's evidence was logical, unified, and consistent with the documentary evidence. Defendant's contention was illogical and contrary to his shop's own receipt. The conviction is not against the manifest weight of the evidence.
 {¶ 39} This assignment of error is without merit.
 {¶ 40} Defendant's third assignment of error states:
 {¶ 41} "Defendant was denied due process of law when the court gave a special instruction concerning the consideration of the testimony of defendant."
 {¶ 42} Within this assignment of error, defendant complains that the trial court erred insofar as it instructed the jury that in "determining the credibility of the witnesses you should consider the interest or bias the witness has in the outcome of the verdict [and various other factors]." (Tr. 304).
 {¶ 43} In State v. Perry, Cuyahoga App. No. 84397,2005-Ohio-27, this Court rejected the same challenge to the court's charge and stated:
 {¶ 44} "The appellant claims in his seventh argument that the trial court erred when it instructed the jury that it should take into account the appellant's interest in the outcome of the case when considering his trial testimony. The appellant cites Statev. Group, 98 Ohio St.3d 248, 2002-Ohio-7247, 781 N.E. 2d 980, for the proposition that a trial judge may not single out a particular witness or group of witnesses and discuss their credibility. However, we find that the Ohio Supreme Court, in Group, was specifically referring to special credibility instructions as they relate to the testimony of police officers, not to defendants taking the witness stand in their own defense. Furthermore, the trial court was not commenting on the credibility of the appellant, only simply reiterating the obvious."
 {¶ 45} See, also, State v. Trapp, No. 85446, 2005-Ohio-4829
(approving the general charge as to witnesses which was given in his case); State v. Charley, Cuyahoga App. No. 82944,2004-Ohio-3463.
 {¶ 46} Likewise in this matter, the court gave the standard charge as to evaluating the credibility of all witnesses, and did not single out a particular witness or group of witnesses. This assignment of error is without merit.
 {¶ 47} Defendant's fourth assignment of error states:
 {¶ 48} "Defendant was denied due process of law when the prosecutor amended the indictment through the course of the closing argument."
 {¶ 49} Within this assignment of error, defendant complains that the prosecuting attorney's closing argument improperly amended Count Two of the indictment to also include the theft of Sekanic's car. He complains that the prosecuting attorney improperly added the car as the object of the theft, as she argued that defendant intended to "deprive the victim of her money and car" and that he "took somebody's money or car" (Tr. 300-301).
 {¶ 50} The test for prosecutorial misconduct is whether the challenged remarks were improper and, if so, whether they prejudicially affected substantial rights of the accused. Statev. Cornwell (1999), 86 Ohio St.3d 560, 570-571, 715 N.E.2d 1144, citing State v. Smith (1984), 14 Ohio St.3d 13, 14-15,470 N.E.2d 883. The closing argument is considered in its entirety to determine whether it was prejudicial. State v. Moritz (1980),63 Ohio St.2d 150, 157, 407 N.E.2d 1268.
 {¶ 51} In this matter, the argument as a whole indicates that the victim gave defendant "$700 and ended up with nothing." (Tr. 290; 301). We do not find this to be a prejudicial assessment of the evidence as Sekanic paid defendant $700 for a transmission repair which was never performed and ultimately lost her vehicle, after being unable to reach defendant for several months, despite repeated attempts. In any event, the court cautioned the jury that closing arguments were not evidence. Accordingly, we cannot conclude that the prosecuting attorney prejudicially affected the substantial rights of the accused. Cf. State v. Gabriel,
Ashtabula App. No. 2003-A-0126, 2005-Ohio-2263.
 {¶ 52} This assignment of error is without merit.
Affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The Court finds there were reasonable grounds for this appeal. It is ordered that a special mandate issue out of this Court directing the Common Pleas Court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Sweeney, J., and Calabrese, Jr., J., concur.