[Cite as *State v. Parra*, 2011-Ohio-3977.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 95619**

---

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## ANTONIO D. PARRA

DEFENDANT-APPELLANT

---

**JUDGMENT:**
**AFFIRMED IN PART; REVERSED IN PART; MODIFIED IN PART; REMANDED**

---

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-522424

**BEFORE:** Kilbane, A.J., Sweeney, J., and Jones, J.

**RELEASED AND JOURNALIZED:** August 11, 2011

**ATTORNEY FOR APPELLANT**

Paul Mancino, Jr.
75 Public Square
Suite 1016
Cleveland, Ohio 44113-2098


**ATTORNEYS FOR APPELLEE**

William D. Mason
Cuyahoga County Prosecutor
Margaret A. Troia
Gregory Mussman
Assistant County Prosecutors
The Justice Center - 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113


MARY EILEEN KILBANE, A.J.:

{¶ 1} Defendant-appellant, Antonio Parra, appeals from his convictions for having a weapon while under disability, tampering with evidence, receiving stolen property, drug trafficking, drug possession, and possession of criminal tools. For the reasons set forth below, we affirm the convictions for tampering with evidence, having a weapon while under disability, and possession of criminal tools. We reverse his conviction for receiving stolen property, modify his conviction for trafficking in more than the bulk amount but less than five times the bulk amount of Methylenedioxymethamphetamine

(MDMA) to the lesser included offense of trafficking under R.C. 2925.03(C), and modify his conviction for possession of more than the bulk amount but less than five times the bulk amount of MDMA to the lesser included offense of possession under R.C. 2925.11(C), and remand for resentencing.

{¶ 2} On March 31, 2009, defendant was indicted pursuant to a 12-count indictment in connection with an armed robbery that was alleged to have occurred on March 9, 2009. Counts 1 and 2 charged him with aggravated robbery, with one- and three-year firearm specifications, and specifications for the forfeiture of a weapon and $854.50. Counts 3 and 4 charged him with kidnapping, with one- and three-year firearm specifications, and specifications for the forfeiture of a weapon and $854.50. Count 5 charged him with having a weapon while under disability and a specification for the forfeiture of a .45 caliber handgun. Count 6 charged him with intimidation of a witness, and specifications for the forfeiture of a .45 caliber handgun and $854.50. Count 7 charged him with tampering with evidence, with one- and three-year firearm specifications, and specifications for the forfeiture of a weapon and $854.50. Count 8 charged him with receiving stolen property, and Count 9 charged him with disrupting public services. Counts 10 and 11 charged him with possessing and trafficking in an amount equal to or exceeding the bulk amount of MDMA, but less than five times the bulk amount of MDMA, with one- and three-year firearm specifications, and specifications for the forfeiture of a weapon and $854.50. Count 12 charged him with possession of criminal tools, with one- and three-year firearm specifications, and

specifications for the forfeiture of a weapon and $854.50. Defendant pled not guilty, and the matter proceeded to a jury trial on February 11, 2010.

{¶ 3} For its case, the State presented testimony from Van H. Frisco (Frisco), James Greenberg, Bratenahl police officers Michael Ivy and Michael Flanagan, Cleveland police officers Gregory Williams and Scott Miller, Cleveland police Detective Michael Legg, and Cleveland police fingerprint examiner Felicia Simington.

{¶ 4} Frisco testified that on March 9, 2009, he invited his boss, James Greenberg, to his home on East 118th Street in the city of Cleveland, to see the 1995 Lexus that Frisco had recently purchased. At about 6:30 p.m., Frisco backed the car into his driveway and spoke to his neighbor. The neighbor went inside, and Greenberg arrived. Greenberg parked on the street then got into the passenger seat of the Lexus, and Frisco got into the driver's seat. A few moments later, a bluish-purple Nissan pulled into the driveway. The passenger got out of the car, approached Frisco on the driver's side of the Lexus, and confronted him with an automatic handgun. Frisco opened the door to find out what the man wanted.

{¶ 5} The gunman, later identified as defendant, was wearing a beige polo jacket, beige polo hat, jeans, and brown boots. The gunman tapped Frisco on the chest with the gun and then took approximately $360 from Frisco's shirt pocket. He demanded the keys to the Lexus, but Frisco indicated that he did not have them. At that point, defendant grabbed Frisco's cell phone and slammed it to the ground. He walked back to the Nissan and then proceeded northbound toward Sellers Avenue.

**{¶ 6}** Frisco and Greenberg followed the Nissan in Greenberg's car. As they reached Sellers Avenue, they observed the Nissan headed back toward them, pursued by a police car. The Nissan turned left and headed west onto Sellers Avenue. The occupants of the Nissan abandoned the vehicle near East 117th Street, cut through yards, and continued on foot toward East 115th Street. Frisco next observed that defendant was no longer wearing the jacket he had been wearing earlier, and saw defendant knocking on the door of one of the houses on East 115th Street. Several police cars passed, and defendant joined a group of people who were playing basketball. Frisco and Greenberg stopped a police cruiser and informed the officer that the person the police had been pursuing minutes earlier was with the group playing basketball. Defendant was subsequently arrested. A few days later, Frisco met with a detective and identified defendant from a photo array. Frisco identified him again in court, and identified State's exhibit 9, a .45 caliber automatic handgun, as the weapon used in this matter.

**{¶ 7}** On cross-examination, Frisco acknowledged that he was imprisoned from 2004 to 2007, on drug-related charges. He stated that he did not know the defendant, and he admitted that while he followed defendant from East 117th Street to East 115th Street, he was not able to continuously observe him.

**{¶ 8}** Greenberg likewise testified that while he and Frisco were seated in the Lexus, a purple vehicle, which Greenberg identified as a Dodge Neon, pulled into the driveway. The passenger exited the car with an automatic handgun and approached the Lexus on the driver's side. He pointed the gun at the men, demanded Frisco's money,

and ordered Greenberg to keep his hands up. The gunman took cash from Frisco's shirt pocket and also demanded the keys to his car. Frisco informed the man that he did not have the keys, and the man then grabbed Frisco's cell phone and threw it to the ground. Greenberg also identified the defendant from a photo array, identified him again in court, and identified State's exhibit 9 as the same weapon defendant had at the time of the robbery.

{¶ 9} Officer Ivy testified that at approximately 6:40 p.m., he observed a purple vehicle that was headed west on Lake Shore Boulevard make a U-turn. Ivy stopped the car and radioed its license plate number, but the occupants of the car fled as Ivy exited his cruiser. Ivy returned to his cruiser and followed the purple car eastward toward Eddy Road. Other units joined in the pursuit in the area of Oakview and East 120th Street. The driver and a passenger abandoned the car at East 118th Street and Sellers Avenue.

{¶ 10} According to Officer Ivy, the driver was wearing a dark jacket and blue jeans, and the passenger was wearing a light-colored sweatshirt, jeans, and a brown cap. Ivy followed the suspects, but after they jumped over a fence, he returned to his vehicle to wait for assistance. A few minutes later, two men approached Ivy and reported that they had been robbed by one of the men who had been in the purple car.

{¶ 11} Officer Ivy next learned that the purple vehicle had been stolen from Katie Simmons. The ignition was "punched" so that a key was not needed to start it, and a screwdriver was on the driver's seat. The defendant was apprehended a short time later,

and Ivy believed, based upon his clothing, that he had been the passenger in the purple car that he pulled over earlier.

{¶ 12} Officer Flanagan testified that he is a K-9 officer who works with a german shepherd that is certified to detect narcotics and track scents. The dog, K-9 Eric, has been trained to go to open areas and "down" or indicate when he finds articles that have fresh human odor. Officer Flanagan has participated in over 50 searches with the aid of a search dog.

{¶ 13} On March 9, 2009, Officer Flanagan and K-9 Eric responded to Officer Ivy's call for assistance and met him on East 118th Street near the abandoned vehicle. Officer Flanagan had K-9 Eric acquire scent from this area, and K-9 Eric tracked toward a nearby wooden fence. K-9 Eric "downed," indicating that it had found an article, and on the opposite side of the fence, Officer Flanagan found a .45 caliber semi-automatic handgun. Nine bullets were in this weapon, and it was operable.

{¶ 14} Officer Williams testified that in response to Officer Ivy's request for assistance, he proceeded to East 118th Street to search for a fleeing suspect wearing a brown checked jacket. At the corner of East 117th Street and Sellers Avenue, he spotted the defendant wearing a light-colored shirt and beige hat. Officer Williams continued to search for someone in a brown jacket, but as he reached East 112th Street, Frisco and Greenberg flagged him down and informed him that the man who had fled from the Bratenahl police was the man in the beige shirt with the tan hat. Frisco additionally reported to Officer Williams that the man had just robbed him.

**{¶ 15}** Officer Williams returned to East 117th Street and Sellers Avenue and observed defendant, in a beige shirt and tan hat, playing basketball with a group of 14 and 15 year olds. He apprehended defendant, patted him down for weapons, and handcuffed him. Officer Williams removed a wad of money from the defendant's right pocket. He felt another object in his left pocket. Williams removed this object, a bag of individually wrapped pills that appeared to be ecstacy tablets.

**{¶ 16}** Officer Miller, a drug analyst with the Cleveland Police Forensic Laboratory, testified that he analyzed the bag of pills obtained in this matter and determined that the bag contained 43 individually wrapped pills that had a total weight of 10.49 grams. He determined that the pills contained ecstacy or MDMA, a schedule I hallucinogen. Officer Miller further testified that the bulk amount of MDMA is 30 grams or 10 unit doses. One pill is a unit dose, and according to the officer, the MDMA was less than the bulk amount by weight but more than the bulk amount by unit dose.

**{¶ 17}** Detective Legg testified that he conducted a follow-up investigation in this matter and interviewed Frisco and Greenberg separately on March 11, 2009. In separate photo arrays, both men identified the defendant as the gunman who had robbed Frisco. Detective Legg next met with the defendant in the city jail. The defendant received his Miranda warnings. He did not wish to make a statement, but said, "I got caught, I'll take it to trial."

**{¶ 18}** Cleveland police fingerprint examiner Simington testified that she determined that the gun recovered in this matter had been handled by multiple people so any fingerprint evidence on the weapon had become contaminated.

**{¶ 19}** At the close of its case, the State nolled the charge of aggravated robbery as set forth in Count 2 (as to Greenberg), and the defendant moved for a judgment of acquittal on the remaining offenses. The trial court denied the motion, and the defendant elected to present evidence.

**{¶ 20}** Defendant testified that he has prior drug convictions. On March 9, 2009, he spent the afternoon with his friend Kurt, who lives at East 115th Street and Sellers Avenue. They wanted drugs so the defendant walked over to see Frisco, who had sold drugs to them on earlier occasions.

**{¶ 21}** Defendant stated that Frisco and Greenberg were in the Lexus when he arrived, so he got into the back seat. Frisco got a phone call, exited the vehicle, and then motioned for Greenberg. While Frisco and Greenberg talked outside, the defendant reached into the console of the Lexus and took out a bag of pills. Defendant walked back toward East 115th Street, pretending to be talking on the telephone, but promised Frisco that he would return. Defendant joined some of his friends who were playing basketball. A short time later, a group of police arrived and, at Frisco's urging, defendant was arrested. Defendant stated that he had not been dressed in a beige shirt with a tan hat, but was wearing a white shirt and white hat. He also denied having a

weapon, and he stated that the money in his possession was from his state and federal tax refunds that totaled $1,678.

{¶ 22} The jury subsequently acquitted defendant of the remaining charge of aggravated robbery, the kidnapping charges, and the charges of intimidation and disruption of public services. Defendant was convicted of having a weapon while under disability, tampering with evidence, receiving stolen property, drug trafficking, drug possession, possession of criminal tools, and the forfeiture specifications, but was acquitted of the three-year firearm specifications for these charges. The trial court sentenced defendant to a total of nine years[1] and three years of postrelease control.

{¶ 23} Defendant now appeals and assigns ten errors for our review. For the sake of convenience, we will address the assignments of error out of their predesignated order.

{¶ 24} Defendant's first assignment of error states:

**"Defendant was denied due process of law when the prosecutor amended the indictment by giving his opinion as to the subject of the tampering with evidence."**

{¶ 25} Within this assignment of error, defendant complains that the prosecuting attorney's closing argument improperly amended the charge of tampering with evidence

---

[1]The court sentenced defendant to three years of imprisonment on Count 5, two years of imprisonment plus one year for the firearm on Count 7, and two years of imprisonment plus one year for the firearm on Counts 10 and 11, which were merged. The court imposed these terms consecutively and concurrent to six-month terms for Counts 8 and 12.

because the indictment referred to "any record, document or thing" but the prosecutor's closing argument referred to the gun and/or Frisco's cell phone.

{¶ 26} Crim.R. 7(D) governs the amendment of indictments and provides in relevant part as follows:

> **"The court may at any time before, during, or after a trial amend the indictment \* \* \* in respect to any defect, imperfection, or omission in form or substance, or of any variance with the evidence, provided no change is made in the name or identity of the crime charged. If any amendment is made to the substance of the indictment \* \* \* or to cure a variance between the indictment \* \* \* and the proof, the defendant is entitled to a discharge of the jury on the defendant's motion, if a jury has been impaneled, and to a reasonable continuance, unless it clearly appears from the whole proceedings that the defendant has not been misled or prejudiced by the defect or variance in respect to which the amendment is made, or that the defendant's rights will be fully protected by proceeding with the trial, or by a postponement thereof to a later day with the same or another jury."**

{¶ 27} In this matter, there was no change in the name or identity of the crime charged. The crime charged remained tampering with evidence, so there was no amendment to the substance of the indictment. Further, the prosecutor's argument conformed to the indictment. See *State v. Halczysak*, Cuyahoga App. No. 87036, 2006-Ohio-3734.

{¶ 28} Accord *State v. Sharpless* (Dec. 18, 1998), Portage App. No. 97-P-0065 (prosecuting attorney's closing argument did not constructively amend the charge where it conformed to the indictment). See, also, *State v. Montes* (1993), 92 Ohio App.3d 539, 636 N.E.2d 378.

{¶ 29} This assignment of error is without merit.

{¶ 30} Defendant's second assignment of error states:

**"Defendant was denied due process of law when the court did not define bulk amount for the jury."**

{¶ 31} Defendant next asserts that the trial court's instructions on the drug offenses (Counts 10 and 11) were erroneous since the court did not define the term "hallucinogen," and did not define the term "bulk amount."

{¶ 32} It is the duty of the court to instruct the jury as a matter of law as to what constitutes a bulk amount under pertinent statutes. *State v. Chaffin* (June 14, 1985), Scioto App. No. 1523. Further, in accordance with R.C. 2925.03(E),

**"(E) When a person is charged with the sale of or offer to sell a bulk amount or a multiple of a bulk amount of a controlled substance, the jury, or the court trying the accused, shall determine the amount of the controlled substance involved at the time of the offense and, if a guilty verdict is returned, shall return the findings as part of the verdict. In any such case, it is unnecessary to find and return the exact amount of the controlled substance involved, and it is sufficient if the finding and return is to the effect that the amount of the controlled substance involved is the requisite amount, or that the amount of the controlled substance involved is less than the requisite amount."**

{¶ 33} In this matter, the jury was required to determine whether the defendant was guilty of trafficking in more than the bulk amount but less than five times the bulk amount of MDMA, but the trial court's oral and written jury instructions failed to define the term "bulk amount" for the jury. Although a prosecution witness testified that the bulk amount is either 10 grams or 30 unit doses, this was insufficient to meet the court's duty of defining the term "bulk amount" for the jury for use during its deliberations.

{¶ 34} As noted in *State v. Huber*, 187 Ohio App.3d 697, 2010-Ohio-2919, 933 N.E.2d 345, however,

> **"While the evidence is insufficient to prove that Huber possessed even the 'bulk amount' of fentanyl, the evidence is sufficient to prove that he possessed at least some amount. '[A]n appellate court "can modify a verdict where the evidence shows that the appellant was not guilty of the crime for which he was convicted, but is guilty of a lesser included offense."'** *State v. Cobb*, **153 Ohio App.3d 541, 2003-Ohio-3821, 795 N.E.2d 73, at ¶7, quoting** *State v. Vanhorn* **(Mar. 31, 1983), Cuyahoga App. No. 44655, \* \* \*. Huber may be convicted of aggravated drug possession under R.C. 2925.11 \* \* \*, which does not specify an amount, simply saying that 'aggravated possession of drugs is a felony of the fifth degree.'"** **Accord** *State v. Skorvanek*, **182 Ohio App.3d 615, 2009-Ohio-1709, 914 N.E.2d 418.**

{¶ 35} Likewise, in this matter, the record does not establish that defendant trafficked in more than the bulk amount of MDMA, but less than five times the bulk amount, and does not establish that defendant possessed more than the bulk amount of MDMA, but less than five times the bulk amount. The record does establish, however, and the State did prove, that defendant committed the lesser included offenses of drug possession and drug trafficking. Defendant's conviction under Count 10 for trafficking in more than the bulk amount but less than five times the bulk amount of MDMA is

modified to the lesser included offense of trafficking under R.C. 2925.03(C). Defendant's conviction under Count 11 for possession of more than the bulk but less than five times the bulk amount of MDMA is modified to the lesser included offense of possession under R.C. 2925.11(C).

{¶ 36} Defendant's fifth assignment of error states:

**"Defendant was denied due process of law when he was convicted of tampering with evidence."**

{¶ 37} In this matter, defendant complains that there is insufficient evidence to support the conviction for tampering with evidence because the State did not identify one single item of evidence with which defendant tampered, but instead listed two alternatives under which the jury could find defendant guilty of this offense — throwing the gun and smashing Frisco's cell phone. He further argues that insofar as the conviction is premised upon the fact that the officers found a weapon behind the fence of the yard where defendant ran, this evidence is insufficient to support the conviction under *State v. Wooden* (1993), 86 Ohio App.3d 23, 619 N.E.2d 1132.

{¶ 38} With regard to the first contention, we note that in *State v. Vitale* (1994), 96 Ohio App.3d 695, 645 N.E.2d 1277, this court held that a defendant has an inalienable right to be tried on the same essential facts on which the grand jury found probable cause. Moreover, the defendant has a constitutional guarantee that the essential facts constituting the offense for which he is tried will be found in the indictment of the grand jury. Id.

{¶ 39} In *State v. McCombs*, Cuyahoga App. No. 91784, 2009-Ohio-4036, this court considered tampering with evidence charges that did not contain a "to wit" phrase to specify the evidence allegedly tampered with. This court noted that the "better practice requires the State to differentiate the charges in the indictment with a 'to wit' phrase, or at least clearly specify the act alleged in the bill of particulars," but this court found no reversible error since the evidence presented at trial provided discernible facts to substantiate the tampering charges.

{¶ 40} In this matter, the indictment charged that defendant did "alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence * * *." There was no "to wit" provision to identify this item. The defense raised no objection to the indictment, and the State's evidence indicated, however, that the gun and the broken cell phone comprised the evidence referred to in this charge. Accordingly, while we reiterate that the better practice is for the State to identify the subjects of the tampering under R.C. 2921.12, we find no plain error herein.

{¶ 41} With regard to the sufficiency of the evidence supporting the conviction for this offense, we note that a challenge to the sufficiency of the evidence supporting a conviction requires a court to determine whether the State has met its burden of production at trial. *State v. Thompkins*, 78 Ohio St.3d 380, 390, 1997-Ohio-52, 678 N.E.2d 541. On review for sufficiency, courts are to assess not whether the State's evidence is to be believed, but whether, if believed, the evidence against a defendant would support a conviction. Id. The relevant inquiry is whether, after viewing the

evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus.

{¶ 42} The elements of tampering with evidence are set forth in R.C. 2921.12(A)(1) as follows:

> **"(A) No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall do any of the following:**
>
> **"(1) Alter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *."**

{¶ 43} With regard to defendant's complaint that the State offered two theories in support of the conviction for this offense, we note that defendant did not object, so we must review this argument under the plain error standard. *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph three of the syllabus. Further, in *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, the Supreme Court rejected the contention that the right to a unanimous verdict includes a right to a unanimous theory of culpable conduct supporting that verdict.

{¶ 44} As to the claim that under *Wooden*, the conviction is unsupported by sufficient evidence, we note that in *Wooden*, the conviction for tampering with evidence was premised upon the fact that the police could not find one of the weapons used in a shooting. The court found insufficient evidence to support the conviction and stated:

> **"While the third gun was not recovered, this evidence is not sufficient to show that the appellant 'altered, destroyed, concealed, or removed'**

**it. Many possibilities as to the whereabouts of the gun can be imagined, including the possibility that one of the other two suspects fled the scene with it in his possession. In any case, the fact that the police looked a few places for the gun and could not find it does not necessarily show that the appellant tampered with it."**

{¶ 45} *Wooden* is clearly distinguishable from this matter as the State's evidence involved more than a missing weapon. Rather, the State's evidence indicated that K-9 Eric tracked the scent from the abandoned car to the fence, then "downed." On the opposite side of the fence, the officer found a .45 caliber semi-automatic weapon that Frisco and Greenberg both identified as the weapon used by defendant. The State presented sufficient evidence that defendant concealed or removed the handgun from the scene of the robbery with purpose to impair its availability as evidence in an official proceeding or investigation. This assignment of error is without merit.

{¶ 46} The sixth assignment of error states:

**"Defendant was denied due process of law when the court denied a motion for judgment of acquittal on the count of receiving stolen property."**

{¶ 47} Crim.R. 29(A), which governs motions for acquittal, states:

**"The court on motion of a defendant or on its own motion, after the evidence on either side is closed, shall order the entry of a judgment of acquittal of one or more offenses charged in the indictment, information, or complaint, if the evidence is insufficient to sustain a conviction of such offense or offenses."**

{¶ 48} In this assignment of error, defendant maintains that the trial court should have acquitted him of receiving stolen property because the State did not offer testimony

from the owner of the vehicle and did not establish that the vehicle was obtained in the commission of a theft offense.

{¶ 49} "Pursuant to Criminal Rule 29(A), a court shall not order an entry of judgment of acquittal if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proved beyond a reasonable doubt." *State v. Bridgeman* (1978), 55 Ohio St.2d 261, 381 N.E.2d 184, syllabus. Moreover, circumstantial and direct evidence possess the same inherent probative value. *Jenks* at 272.

{¶ 50} The elements of receiving stolen property are set forth in R.C. 2913.51 as follows:

> **"(A) No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe that the property has been obtained through commission of a theft offense."**

{¶ 51} Receiving stolen property is a felony of the fourth degree if the property is a motor vehicle. R.C. 2913.51(C).

{¶ 52} In *State v. Sims* (1983),10 Ohio App.3d 56, 460 N.E.2d 672, this court reversed the receiving stolen property conviction of a passenger in a car that had damage to the steering wheel. In reversing the conviction, this court held that "a conviction for a theft-related offense cannot stand where a necessary element of the crime is demonstrated solely by reference to hearsay information on a police computer print-out indicating that certain property was stolen."

{¶ 53} In this matter, Officer Ivy testified that defendant had been the passenger in a vehicle that had been stolen from Simmons. The ignition was "punched" so that a key was not needed to start it, but Simmons did not testify. On this record, we hold that defendant's conviction for receiving stolen property cannot stand since the essential element, that the vehicle was stolen, was established by hearsay evidence and the owner did not testify.

{¶ 54} This assignment of error is well taken, and the conviction for receiving stolen property is reversed. The third assignment of error that challenges the mens rea for this offense, and the fourth assignment of error that challenges the degree of this offense, are accordingly rendered moot. App.R. 12(A).

{¶ 55} Defendant's seventh assignment of error states:

**"Defendant was denied due process of law when the court overruled his motion for judgment of acquittal as to the offense of having a weapon while under a disability."**

{¶ 56} Here, defendant complains that there is no evidence that defendant possessed a handgun within the meaning of R.C. 2923.13.

{¶ 57} In accordance with R.C. 2923.13, individuals who have been convicted of any felony offense of violence are not permitted to "knowingly acquire, have, carry, or use any firearm or dangerous ordnance."

{¶ 58} In this matter, Frisco and Greenberg both testified that defendant had a weapon when he exited the vehicle and that he pointed the weapon at Frisco while he demanded Frisco's money. This evidence is sufficient to establish that defendant, a

convicted felon, had a weapon. See *State v. Ferrell* (1992), 83 Ohio App.3d 294, 614 N.E.2d 1081. Moreover, the acquittal on the firearm specifications for other counts of the indictment does not mandate a different result. See *State v. Boyd* (Jan. 12, 1995), Cuyahoga App. No. 65883; *State v. Woodson* (1985), 24 Ohio App.3d 143, 493 N.E.2d 1018. The *Woodson* court explained:

> **"In criminal cases, as contrasted with civil cases, consistency between verdicts on several counts of an indictment is unnecessary where the defendant is convicted on one or some counts, and acquitted on others, and the conviction will generally be upheld, irrespective of its rational incompatibility with the acquittal.**
>
> **Thus, any inconsistency between verdicts on a count in an indictment charging appellant with having a weapon while under disability and a firearm specification within the same count will not be grounds for reversal." Id.**

{¶ 59} In accordance with the foregoing, this assignment of error is without merit.

{¶ 60} Defendant's eighth assignment of error states:

> **"Defendant was denied due process of law when the court informed the jury that the forfeiture needed to only be proven by a preponderance of the evidence and gave no definition of that term."**

{¶ 61} In *State v. Rivera*, Cuyahoga App. No. 85059, 2005-Ohio-2622, this court rejected this same argument and stated:

> **"R.C. 2933.43(C) expressly provides that the standard of proof in forfeiture proceedings is a preponderance of the evidence.**
>
> **'When a hearing is conducted under this section, property shall be forfeited upon a showing, by a preponderance of the evidence, by the petitioner that the person from which the property was seized was in violation of division (A) of section 2933.42 of the Revised Code. If that showing is made, the court shall issue an order of forfeiture.' R.C. 2933.43(C).**

In *State v. Casalicchio* (1991), 58 Ohio St.3d 179, 569 N.E.2d 916, the Ohio Supreme Court held that a preponderance of the evidence is the appropriate standard in forfeiture proceedings." Accord *State v. Fannin*, Cuyahoga App. No. 79991, 2002-Ohio-6312.

{¶ 62} In accordance with the foregoing, this assignment of error is without merit.

{¶ 63} Defendant's ninth assignment of error states:

**"Defendant was denied due process of law when he was arbitrarily sentenced to consecutive sentences."**

{¶ 64} In this assignment of error, defendant complains that the trial court failed to consider required statutory factors before imposing sentence. He notes that in *Oregon v. Ice* (2009), 555 U.S. 160, 129 S.Ct. 711, 172 L.Ed.2d 517, the Supreme Court of the United States permitted judicial fact-finding to impose consecutive sentences, contrary to the Ohio Supreme Court's ruling in *State v. Foster*,109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. He further complains that the court did not consider R.C. 2929.11 and 2929.12 in this matter.

{¶ 65} In *State v. Hodge*, 128 Ohio St.3d 1, 2010-Ohio-6320, 941 N.E.2d 768, the Ohio Supreme Court recently addressed this argument and held that *Ice* "does not revive Ohio's former consecutive-sentencing statutory provisions, R.C. 2929.14(E)(4) and 2929.41(A), which were held unconstitutional in *Foster*. Trial court judges are not obligated to engage in judicial fact-finding prior to imposing consecutive sentences unless the General Assembly enacts new legislation requiring that findings be made." Id. at paragraphs two and three of the syllabus.

{¶ 66} Therefore, on review, an appellate court engages in the following two-part inquiry:

> **"First, [appellate courts] must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision in imposing the term of imprisonment is reviewed under the abuse of discretion standard."** *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

{¶ 67} Under the version of R.C. 2929.11(A) in effect at the time defendant was sentenced, when a trial court sentences an offender for a felony conviction it must be guided by the "overriding purposes of felony sentencing." Those purposes are "to protect the public from future crime by the offender and others and to punish the offender." Id. R.C. 2929.11(B) states that a felony sentence "must be reasonably calculated to achieve the purposes set forth under R.C. 2929.11(A), commensurate with and not demeaning to the seriousness of the crime and its impact on the victim, and consistent with sentences imposed for similar crimes committed by similar offenders." R.C. 2929.12 sets forth factors a trial court must consider when determining the seriousness of the offense and the likelihood that the offender will commit future offenses.

{¶ 68} This court has previously recognized that there is no requirement for judicial findings in either R.C. 2929.11 or R.C. 2929.12, and that the trial court is required only to carefully consider the statutory factors before imposing its sentence. *State v. Samuels*, Cuyahoga App. No. 88610, 2007-Ohio-3904, ¶15. See, also, *State v. Dudley*, Lake App.

No. 2009-L-019 (By expressly stating that it considered the factors in R.C. 2929.11 and R.C. 2929.12, the court satisfies its duty under those statutes).

{¶ 69} In this matter, the sentence imposed for each offense was within the statutory ranges for the offenses (three years for having a weapon while under disability, two years for tampering with evidence, six months for receiving a stolen property, two years for drug trafficking and drug possession, and six months for possession of criminal tools, with one year on the firearm specification). The trial court was not required to engage in judicial fact-finding prior to imposing consecutive sentences. In addition, the trial court's remarks at the sentencing hearing indicate that the court considered the appropriate statutory factors, and the trial court's sentencing journal entry also indicates that the trial court considered the requisite factors. We find no error at law and no abuse of discretion.

{¶ 70} This assignment of error is without merit.

{¶ 71} Defendant's tenth assignment of error states:

**"Defendant was denied effective assistance of counsel."**

{¶ 72} Within this assignment of error, defendant asserts that his trial counsel was ineffective because he: (1) failed to object to the prosecuting attorney's questioning of Detective Legg regarding whether defendant made a statement at the time of his arrest; (2) failed to file a motion to suppress evidence obtained at the time of defendant's warrantless arrest; (3) failed to object to hearsay that indicated the car defendant drove was stolen; (4) failed to object to the State's closing argument that mentioned a lack of

witnesses to support defendant's version of events; and (5) failed to object to defects in the charge of having a weapon while under disability.

{¶ 73} In order to establish a claim of ineffective assistance of trial counsel, it is clear that a defendant must make a two-part showing:

> **"First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland v. Washington* (1986), 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674.**

{¶ 74} The *Strickland* court also cautioned courts examining the issue that:

> **"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." 466 U.S. at 689.**

{¶ 75} An attorney is presumed to be competent. *State v. Smith* (1985), 17 Ohio St.3d 98, 100, 477 N.E.2d 1128. An appellant bears the burden of proving his claim of ineffective assistance of counsel. Id.

1. Reference to Defendant's Refusal to Give a Statement

**{¶ 76}** As to the first claim, defendant asserts that the detective's testimony that he refused to give a written statement to the officer during his arrest violated due process under *Doyle v.Ohio* (1976), 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91.

**{¶ 77}** After throughly reviewing this matter, we conclude that the reference to defendant's refusal to make a statement was a single, isolated comment which, in light of the remaining evidence of defendant's guilt, constituted harmless error. *State v. Mallory*, Cuyahoga App. No. 93736, 2010-Ohio-4249; *State v. Sims*, Cuyahoga App. No. 84090, 2005-Ohio-1978. Therefore counsel did not err in failing to object to this statement from Detective Legg.

2. Failure to File a Motion to Suppress

**{¶ 78}** As to the claim that defendant's trial counsel did not file a motion to suppress evidence obtained during the warrantless arrest, we note that counsel does not perform ineffectively by failing to file futile motions, and is not ineffective for failing to file a motion to suppress evidence when there is no reasonable probability that the motion would be granted. See *State v. Martin* (1983), 20 Ohio App.3d 172, 174, 485 N.E.2d 717; *State v. Gibson* (1980), 69 Ohio App.2d 91, 430 N.E.2d 954; *State v. Means* (June 30, 1994), Cuyahoga App. No. 65744. Where the record is devoid of facts to indicate that a motion to suppress would have been granted, a claim for ineffective assistance of counsel on this basis must fail. Id.; *State v. Woolum* (1976), 47 Ohio App.2d 313, 354 N.E.2d 712.

{¶ 79} Although the Fourth Amendment generally prohibits warrantless searches, one of the exceptions to the warrant requirement is a *Terry* search. *Terry v. Ohio* (1968), 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889. Under *Terry*, a police officer may perform a patdown search for weapons where the officer reasonably concludes that criminal activity may be afoot and that the persons with whom he is dealing may be armed and presently dangerous. When performing a *Terry* patdown search for weapons, the officers may "seize nonthreatening contraband when its incriminating nature is 'immediately apparent' to the searching officer through the sense of touch." *State v. Cooper*, Cuyahoga App. No. 82588, 2003-Ohio-6038.

{¶ 80} Searches incident to arrest are broad in scope, and the police may fully search an arrestee for weapons and contraband. *State v. Ferman* (1979), 58 Ohio St.2d 216, 389 N.E.2d 843.

{¶ 81} In this matter, the police pursued defendant following the U-turn and chased him after he abandoned the vehicle. After Frisco and Greeenberg apprised the officers that defendant was playing basketball nearby, and had robbed Frisco moments earlier, the officers seized him and searched him incident to his arrest for armed robbery. Therefore, the patdown and search of defendant's pockets was reasonable and may be justified as either a *Terry* stop or a search incident to arrest. Counsel did not err in failing to seek suppression herein.

3. Admission of Hearsay as to Theft of Car

{¶ 82} As to the admission of hearsay evidence that Simmons reported the vehicle stolen, we note that this conviction has been reversed for insufficient evidence so we recognize no prejudicially erroneous representation as to this count of the indictment.

4.   Failure to Object to Closing Argument

{¶ 83} A prosecutor may jeopardize the integrity of a trial by commenting on a criminal defendant's decision not to testify, but the State is permitted to comment upon a defendant's failure to offer evidence in support of its case.  *State v. Collins*, 89 Ohio St.3d 524, 527-28, 2000-Ohio-231, 733 N.E.2d 1118.

{¶ 84} In this matter, the challenged remarks were addressed to defendant's failure to offer proof in support of his case, but did not imply that the burden of proof should shift to defendant.   The remark was not improper, and counsel did not err in failing to object to it.

5.   Counsel Erred in Permitting Amendment of the Weapons Under Disability Charge

{¶ 85} Here defendant claims that his trial counsel erred in permitting the State to amend the charge of having a weapon while under disability in order to assert the culpable mental state of "recklessly" for the element of whether defendant was unaware that his prior convictions prohibited him from possessing a firearm.

{¶ 86} In *State v. Johnson*, 128 Ohio St.3d 107, 2010-Ohio-6301, 942 N.E.2d 347, paragraph one of the syllabus, the Ohio Supreme Court held that a conviction for violation of the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that

the offender is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse. Accord *State v. Adams*, Cuyahoga App. No. 93513, 2010-Ohio-4478.

{¶ 87} Here, the charge of having a weapon while under disability tracked the language of R.C. 2923.13, so the charge was not defective because it lacked the essential element of recklessness. Counsel therefore did not commit a prejudicial error in failing to object to the amendment of this charge.

{¶ 88} The claim of ineffective assistance of counsel is without merit.

{¶ 89} Defendant's convictions for tampering with evidence, having a weapon while under disability, and possession of criminal tools are affirmed; the conviction for receiving stolen property is reversed; the conviction for trafficking in more than the bulk amount but less than five times the bulk amount of MDMA is modified to the lesser included offense of trafficking under R.C. 2925.03(C); and the conviction for possession of more than the bulk but less than five times the bulk amount of MDMA is modified to the lesser included offense of drug possession under R.C. 2925.11(C). The matter is remanded for resentencing.

It is ordered that appellant recover from appellee costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

MARY EILEEN KILBANE, ADMINISTRATIVE JUDGE

JAMES J. SWEENEY, J., and
LARRY A. JONES, J., CONCUR