[Cite as *State v. Harper*, 2011-Ohio-4568.]

[Please see nunc pro tunc opinion at 2013-Ohio-4443.]

COURT OF APPEALS
GUERNSEY COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. Sheila G. Farmer, J. |
| Plaintiff-Appellee | : | Hon. Julie A. Edwards, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2010-CA-44 |
| HENRY HARPER | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

| | |
|---|---|
| CHARACTER OF PROCEEDING: | Criminal appeal from the Guernsey County Court of Common Pleas, Case No.10-CR-70 |
| JUDGMENT: | Affirmed |
| DATE OF JUDGMENT ENTRY: | September 9, 2011 |
| APPEARANCES: | |

| For Plaintiff-Appellee | For Defendant-Appellant |
|---|---|
| DANIEL G. PADDEN | RONALD COUCH |
| 139 West Eighth Street | 121 West Eighth Street |
| Cambridge, OH 43725 | Cambridge, OH 43725 |

*Gwin, P.J.*

{¶1} Defendant-appellant Henry Harper appeals the judgment of the Guernsey County Court of Common Pleas convicting him of Kidnapping with a firearm specification, a felony of the first degree in violation of R.C. 2905.01(A)(1) and (2), Having Weapons While Under a Disability with a firearm specification a felony of the third degree in violation of R.C. 2923.13, and Discharge of a Firearm on or Near Prohibited Premises a misdemeanor of the first degree in violation of R.C. 2923.162. Plaintiff-appellee is the State of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2} On May 7, 2010 appellant was employed by Little Bear Construction which is owned by David Ratliff, it was Friday and a pay day. There was a disagreement at work and appellant left the work sight and went to the home of Mr. Ratliff. Appellant was anxious, excited, and argumentative.

{¶3} After leaving Mr. Ratliff's residence, appellant arrived at the residence of a friend, Charles Dalton, at approximately 5:30 p.m. At the Dalton residence, appellant was observed to be agitated and in possession of a black handgun.

{¶4} At approximately 7:30 p.m. appellant's wife, Tina Harper, arrived home from running errands to find her husband drinking and upset. Appellant said to his wife, "Bitch, you're going to take me down there," meaning to Mr. Ratliff's residence. (T. at 287). Appellant was knocking things off the kitchen counter, breaking things, and would not calm down. Appellant knocked a frying pan off the stove and ordered Mrs. Harper to drive him to Mr. Ratliff's home. Appellant stated that he was going to "teach him a

lesson." (T. at 288). Mrs. Harper drove appellant and they stopped at different places including a service station and a friend's home.

{¶5} Mrs. Harper was scared and afraid of appellant. (T. at 287-288.) Appellant threatened his wife during the incident, showing her the butt of his gun while she was driving and waving the gun around next to her. Appellant gave his wife directions to the Ratliff home, telling her that if she pulled over or made a scene he would beat her head in with the gun. Appellant told his wife that he was going to "shoot up" Mr. Ratliff's truck, and when they arrived at the residence, appellant put his arm out the window and Mrs. Harper heard several gunshots.

{¶6} After this incident, appellant came into contact with a friend Robert Webb, to whom he relayed the information that he had "just shot at some people." (T. at 271).

{¶7} At 10:27 p.m. on May 7, 2010, the Guernsey County Sheriff's Office received a call regarding shots being fired at the residence of David Ratliff. Upon arrival at the scene, the deputies discovered several spent Winchester 9 mm casings along the roadway in front of the residence. Mr. Ratliff informed the deputies that earlier that day he had a disagreement with appellant regarding some occurrences on a job site.

{¶8} At approximately 11:30 p.m. on the same night, the deputies were en route to the Sheriff's Office when they received another call regarding a man with a pistol. Upon learning that the subject of the call was appellant, the deputies went to appellant's home. Appellant was not at the residence, but his wife arrived shortly after the deputies, driving a silver S-10 pickup truck. At the time of her arrival at the residence, Mrs. Harper told the deputies that she did not know the current whereabouts of appellant.

{¶9}   Mrs. Harper permitted the deputies to search the residence.  During that search, the deputies discovered a partial box of Winchester 9 mm bullets and empty gun boxes.  Also on the property, the deputies located a minivan behind a building. The hood of the van was warm as if the van had been recently driven.  Mrs. Harper eventually admitted she had driven appellant to the residence of a Mr. Dalton.

{¶10} Upon arriving at Mr. Dalton's residence, the deputies patted appellant down for weapons. At the Sheriff's Office, appellant submitted to a gunshot residue swab. Appellant was asleep in the holding cell and his right arm was resting underneath his body. When the deputy asked appellant for his left hand in order to conduct the gunshot residue test appellant raise his left arm straight up in the air allowing the deputy to conduct the test.  When the deputy asked for his right hand, appellant did not answer or otherwise comply with the request. Appellant tested positive for gunshot residue.

{¶11} Testimony was introduced at trial that appellant owned a gun and that he had it with him that night. In addition appellant acknowledged that he had been convicted of a felony about twenty-five (25) years before the night in question. Further it was acknowledged that there was no record that was attached or a part of the original case to indicate that appellant had expunged or sealed that record. However, appellant testified that he had purchased guns legally since his previous felony and had gone through records checks for those purchases. He had further passed records checks for federal employment and other jobs that he had held. Finally, appellant testified that he had asked his attorney to file and seal his record and that he thought that had been done some years before the incidents which occurred May 7, 2010 and which resulted in these charges being filed.

{¶12} On May 25, 2010, appellant was indicted by the Guernsey County Grand Jury for the following:

{¶13} Having Weapons While Under Disability in violation of R.C. 2923.13, with a Firearm Specification, a felony of the third degree;

{¶14} Tampering With Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree;

{¶15} Discharge of Firearm on or Near Prohibited Premises in violation of R.C. 2923.162, a misdemeanor of the first degree; and

{¶16} Kidnapping in violation of R.C. 2905.01(A)(1) and (2), with a Firearm Specification, a felony of the first degree.

{¶17} On October 15, 2010, the jury returned the following verdicts:

{¶18} GUILTY of Having Weapons While Under Disability in violation of R.C. 2923.13, with a Firearm Specification, a felony of the third degree;

{¶19} NOT GUILTY of Tampering With Evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree;

{¶20} GUILTY of Discharge of Firearm on or Near Prohibited Premises in violation of R.C. 2923.162, a misdemeanor of the first degree; and

{¶21} GUILTY of Kidnapping in violation of R.C. 2905.01(A)(1) and (2), with a Firearm Specification, a felony of the first degree.

{¶22} On November 3, 2010, appellant was sentenced to three years imprisonment for Count 1, six months imprisonment for Count 3, two years imprisonment for Count 4, and three years imprisonment for the Firearm Specification to Count 4. The three year mandatory sentence for the Firearm Specification was ordered

to be served first with all remaining prison terms to be served consecutively, for a total of eight years imprisonment.

{¶23} Appellant has timely appealed raising three assignments of error:[1]

{¶24} "I. THE DECISION WAS AGAINST THE SUFFICIENCY AND MANIFEST WEIGHT OF THE EVIDENCE.

{¶25} "II. THE TRIAL COURT COMMITTED ERROR BY IMPROPERLY CHARGING THE JURY.

{¶26} "III. APPELLANT WAS DENIED HIS RIGHT BECAUSE OF INEFFECTIVE ASSISTANCE OF COUNSEL."

I.

{¶27} In his first assignment of error, appellant maintains that his convictions are against the weight of the evidence and are based upon insufficient evidence. We disagree.

{¶28} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S.Ct. 2781, which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown* (2010), --- U.S. ----, 130 S.Ct. 665, 673, 175 L.Ed.2d 582

---

[1] Appellant, pro se, attempted to file documents with the Clerk of Courts in this case. He did not request and was not granted leave to file a pro se brief. This brief was filed after the State had filed its brief. Appellant's pro se brief does not show a proper Proof of Service as mandated by App. R. 13. Accordingly, the State had no opportunity to reply to appellant's pro se brief. Additionally, Ohio law prohibits a defendant and his appointed counsel from acting as "co-counsel" See, *State v. Martin*, 103 Ohio St.3d 385, 816 N.E.2d 227, 2004-Ohio-5471. Accordingly, we will not address appellant's pro se arguments in the disposition of this appeal.

(reaffirming this standard). See, *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010-Ohio-2720 at ¶68.

**{¶29}** *Jackson* thus establishes a two-step inquiry for considering a challenge to a conviction based on sufficiency of the evidence. First, a reviewing court must consider the evidence presented at trial in the light most favorable to the prosecution. *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. This means that a court of appeals may not usurp the role of the finder of fact by considering how it would have resolved the conflicts, made the inferences, or considered the evidence at trial. See Id*.,* at 318-319, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560. Rather, when "faced with a record of historical facts that supports conflicting inferences" a reviewing court "must presume even if it does not affirmatively appear in the record that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Id. at 326, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; see also *McDaniel,* --- U.S. ----, 130 S.Ct. at 673-674, 175 L.Ed.2d 582; *United States v. Nevils* (C.A.9, 2010), 548 F.3d 802.

**{¶30}** Second, after viewing the evidence in the light most favorable to the prosecution, the reviewing court must determine whether this evidence, so viewed, is adequate to allow "*any* rational trier of fact [to find] the essential elements of the crime beyond a reasonable doubt." *Jackson,* 443 U.S. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Thompkins* (1997), 78 Ohio St.3d 380, 387, 678 N.E.2d 541; *State v. Jenks* (1991), 61 Ohio St.3d 259, 574 N.E.2d 492. See, *State v. Clay*, supra at ¶ 70.

**{¶31}** This second step protects against rare occasions in which "a properly instructed jury may * * * convict even when it can be said that no rational trier of fact could find guilt beyond a reasonable doubt." *Jackson,* 443 U.S. at 317, 99 S.Ct. 2781,

61 L.Ed.2d 560. More than a "mere modicum" of evidence is required to support a verdict. Id. at 320, 99 S.Ct. 2781, 61 L.Ed.2d 560 (rejecting the rule that a conviction be affirmed if "some evidence" in the record supports the jury's finding of guilt). At this second step, however, a reviewing court may not "'ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt,' " Id. at 318-319, 99 S.Ct. 2781, 61 L.Ed.2d 560, quoting *Woodby v. INS* (1966), 385 U.S. 276, 282, 87 S.Ct. 483, 17 L.Ed.2d 362, only whether "*any*" rational trier of fact could have made that finding, Id. at 319, 99 S.Ct. 2781, 61 L.Ed.2d 560. *Nevils*.

**{¶32}** Manifest weight of the evidence claims concern the amount of evidence offered in support of one side of the case, and is a jury question. We must determine whether the jury, in interpreting the facts, so lost its way that its verdict results in a manifest miscarriage of justice, *State v. Thompkins* (1997), 78 Ohio St. 3d 387, 678 N.E.2d 541, 1997-Ohio-52, superseded by constitutional amendment on other grounds as stated by *State v. Smith,* 80 Ohio St.3d 89, 1997-Ohio-355, 684 N.E.2d 668. On review for manifest weight, a reviewing court is "to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment." *State v. Thompkins*, supra, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the

credibility of the witnesses are primarily for the trier of fact. *State v. DeHass* (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, syllabus 1.

**{¶33}** In *Thompkins*, the Ohio Supreme Court held "[t]o reverse a judgment of a trial court on the basis that the judgment is not sustained by sufficient evidence, only a concurring majority of a panel of a court of appeals reviewing the judgment is necessary." Id. at paragraph three of the syllabus. However, to "reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." Id. at paragraph four of the syllabus; *State v. Miller* (2002), 96 Ohio St.3d 384, 2002-Ohio-4931 at ¶38, 775 N.E.2d 498.

**{¶34}** Appellant was found guilty of Kidnapping. R.C. 2905.01 defines the offense of kidnapping as, "(A) No person, by force, threat, or deception, or, in the case of a victim under the age of thirteen or mentally incompetent, by any means, shall remove another from the place where the other person is found or restrain the liberty of the other person, for any of the following purposes: (1) To hold for ransom, or as a shield or hostage; (2) To facilitate the commission of any felony or flight thereafter."

**{¶35}** In the case at bar, appellant's wife testified that she was scared and afraid of appellant and that he threatened physical harm to her if she did not comply with his directions. It was further clear that by forcing Mrs. Harper to drive him to Mr. Ratliff's home, she facilitated the commission of the felony and the flight thereafter.

**{¶36}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the crime of kidnapping. We hold, therefore, that the State met

its burden of production regarding each element of the crime of kidnapping and, accordingly, there was sufficient evidence to support appellant's conviction.

**{¶37}** A fundamental premise of our criminal trial system is that 'the *jury* is the lie detector.' *United States v. Barnard,* 490 F.2d 907, 912 (C.A.9 1973) (emphasis added), cert. denied, 416 U.S. 959, 94 S.Ct. 1976, 40 L.Ed.2d 310 (1974). Determining the weight and credibility of witness testimony, therefore, has long been held to be the 'part of every case [that] belongs to the jury, who are presumed to be fitted for it by their natural intelligence and their practical knowledge of men and the ways of men.' *Aetna Life Ins. Co. v. Ward,* 140 U.S. 76, 88, 11 S.Ct. 720, 724-725, 35 L.Ed. 371 (1891)". *United States v. Scheffer* (1997), 523 U.S. 303, 313, 118 S.Ct. 1261, 1266-1267.

**{¶38}** Although appellant cross-examined the witnesses and argued that Mrs. Harper was left alone during the time she was in the car with appellant and further that she did not ask for help when she had the opportunity to do so to negate the State's argument that he kidnapped his wife, the weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. Jamison* (1990), 49 Ohio St.3d 182, certiorari denied (1990), 498 U.S. 881. The jury was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the jury may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence". *State v. Craig* (Mar. 23, 2000), Franklin App. No. 99AP-739, citing *State v. Nivens* (May 28, 1996), Franklin App. No. 95APA09-1236 Indeed, the jurors need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* Franklin App. No. 02AP-604, 2003-

Ohio-958, at ¶ 21, citing *State v. Antill* (1964), 176 Ohio St. 61, 67, 197 N.E.2d 548.; *State v. Burke*, Franklin App. No. 02AP-1238, 2003-Ohio-2889, citing *State v. Caldwell* (1992), 79 Ohio App.3d 667, 607 N.E.2d 1096. Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks* (1991), 61 Ohio St. 3d 259, 574 N.E. 2d 492.

{¶39} After reviewing the evidence, we cannot say that this is one of the exceptional cases where the evidence weighs heavily against the convictions. The jury did not create a manifest injustice by concluding that appellant was guilty of the crime of Kidnapping as charged in the indictment.

{¶40} We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The evidence in the record could convince a reasonable trier of fact that the elements of Kidnapping had been met by the state.

{¶41} Appellant's conviction for Kidnapping is supported by sufficient evidence, and not against the manifest weight of the evidence.

{¶42} Appellant was also convicted of having weapons while under disability. R.C. 2923.13, states, in pertinent part: (A) Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:

{¶43} "* * *

{¶44} "(2) The person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission

of an offense that, if committed by an adult, would have been a felony offense of violence."

**{¶45}** In the case at bar, it is clear that appellant had a firearm and that he used that firearm to damage Mr. Ratliff"s property. In addition, the State admitted a certified copy of appellant's conviction for aggravated assault during appellant's jury trial. See, R.C. 2945.75. (State' Exhibit K; T. at 403-404). Aggravated assault is a "crime of violence". See, R.C. 2901.01(a).

**{¶46}** Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that appellant had committed the offense of having weapons while under disability. We hold, therefore, that the State met its burden of production regarding each element of the crime of having weapons while under disability and, accordingly, there was sufficient evidence to support appellant's conviction.

**{¶47}** Appellant argued that he had believed his conviction for aggravated assault had been sealed, and further that he had past several background checks which should have revealed the existence of his disability under R.C. 2923.13.

**{¶48}** In *State v. Johnson*, 128 Ohio St.3d 107, 942 N.E.2d 347, 2010-Ohio-6301, the Ohio Supreme Court held, "A conviction for violation of the offense of having weapons while under disability as defined by R.C. 2923.13(A)(3) does not require proof of a culpable mental state for the element that the offender is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse." Id. at paragraph one of the syllabus.

**{¶49}** Under the plain language of R.C. 2923.13(A) (2), notice of a disability is not an expressed element of the offense charged. The statute does not require a defendant to be aware of or have knowledge of his disability. *State v. Smith* (1987), 39 Ohio App. 3d 24, 25, 528 N.E.2d 1292; *State v. Schilling* (September 19, 2000), Tuscarawas App. No.2000AP040034; State v. Jackson (Oct. 20, 1993), Summit App. No. CA 16086; *State v. Quiles* (Feb. 3, 1993), Lorain App. No. 92CA005316. Instead, R.C. 2923.13 only requires that the defendant knowingly acquire, have, carry, or use a firearm while under a disability. *Smith* at 25; *Schilling* at 11; *Jackson* at 3; *Quiles* at 1.

**{¶50}** We find the same analysis applies to a violation of R.C.2913.(A)(2). In the case at bar, appellant admitted that he had been convicted of an offense of violence and further, the state entered into evidence a certified copy of appellant's conviction. Additionally, the Guernsey County Clerk of Courts testified that she could find nothing in appellant's case file to substantiate that the conviction had been expunged or sealed.

**{¶51}** We conclude the trier of fact, in resolving the conflicts in the evidence, did not create a manifest injustice to require a new trial. The evidence in the record could convince a reasonable trier of fact that the elements of having weapons while under disability had been met by the state.

**{¶52}** Appellant's conviction for having weapons while under disability is supported by sufficient evidence, and not against the manifest weight of the evidence.

**{¶53}** Appellant's First Assignment of Error is overruled.

II.

**{¶54}** In his Second Assignment of Error, appellant maintains that the trial court improperly charged the jury regarding the definition of knowingly with respect to the charge of having weapons while under disability.  We disagree.

**{¶55}** In the case at bar, the trial court instructed the jury as follows:

**{¶56}** "A person acts knowingly regardless of his purpose when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist." (T. at 510).

**{¶57}** Appellant argues that the trial court should have also instructed the jury, "Knowingly means that a person is aware of the existence of the facts and that his acts will probably (cause a certain result) (be of a certain nature)." OJI 417.11 CR.

**{¶58}** Crim.R. 30 provides that a party may not assign as error the giving or failure to give an instruction unless he objects before the jury retires to consider its verdict. Where a defendant fails to raise a timely objection to the giving or failure to give an instruction, the defendant has waived all but plain error. *State v. Adams* (1980), 62 Ohio St. 2d 151, 154. An alleged error "does not constitute a plain error ... unless, but for the error, the outcome of the trial clearly would have been otherwise." *State v. Long* (1978), 53 Ohio St.2d 91, 372 N.E.2d 804, paragraph two of the syllabus.   Initially, there is no indication in the record that appellant raised any objection to the trial court's decision to charge to the jury and, therefore, has waived all but plain error. In this case, however, the trial court did not commit any error in issuing this charge to the jury, plain or otherwise.

**{¶59}** As noted in our disposition of appellant's First Assignment of Error, supra. "R.C. 2923.13 does not require a defendant to be aware of his disability as an element of the offense. Rather, the statute only requires a defendant knowingly acquire, have, carry, or use a firearm while a disability exists. We cannot support the notion ignorance of the law is a defense to a criminal prosecution." *State v. Schilling* (September 19, 2000), Tuscarawas App. No.2000AP040034. See also, *State v. Johnson*, 128 Ohio St.3d 107, 942 N.E.2d 347, 2010-Ohio-6301 at ¶42.

**{¶60}** Accordingly, we find no plain error affecting appellant's substantial rights occurred as a result of the trial court's instructions to the jury and the failure to instruct the jury as suggested by appellant.

**{¶61}** Appellant's Second Assignment of Error is overruled.

III.

**{¶62}** In his Third Assignment of Error appellant contends that his trial counsel was ineffective. Specifically, appellant argues counsel was ineffective by failing to present a copy of his actual B.C.I. criminal record which would show that his previous felony conviction had been sealed and was not a part of his criminal record. In addition his trial counsel did not object to information coming before the jury concerning the appellant's misdemeanor convictions for Domestic Violence. We disagree.

**{¶63}** A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. *Lockhart v. Fretwell* (1993), 506 U.S. 364, 113 S.Ct. 838;

*Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373.

**{¶64}** In order to warrant a finding that trial counsel was ineffective, the petitioner must meet both the deficient performance and prejudice prongs of *Strickland* and *Bradley. Knowles v. Mirzayance* (2009), --- U.S. ----, 129 S.Ct. 1411, 1419, 173 L.Ed.2d 251.

**{¶65}** To show deficient performance, appellant must establish that "counsel's representation fell below an objective standard of reasonableness." *Strickland v. Washington,* 466 U.S. at 688, 104 S.Ct. at 2064. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. *Strickland v. Washington* 466 U.S. at 687, 104 S.Ct. at 2064. Counsel also has a duty to bring to bear such skill and knowledge as will render the trial a reliable adversarial testing process. *Strickland v. Washington* 466 U.S. at 688, 104 S.Ct. 2052 at 2065.

**{¶66}** "Thus, a court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance. In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the

particular case. At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶67} In light of "the variety of circumstances faced by defense counsel [and] the range of legitimate decisions regarding how best to represent a criminal defendant," the performance inquiry necessarily turns on "whether counsel's assistance was reasonable considering all the circumstances." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064. At all points, "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland v. Washington*, 466 U.S. 668 at 689,104 S.Ct. at 2064.

{¶68} Appellant must further demonstrate that he suffered prejudice from his counsel's performance. See *Strickland,* 466 U. S., at 691 ("An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment"). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. To prevail on his ineffective-assistance claim, appellant must show, therefore, that there is a "reasonable probability" that the trier of fact would not have found him guilty.

{¶69} Although appellant argues that his B.C.I. record would show his previous conviction was sealed, he did not proffer that record in the trial court. In *State v. Hooks* (2001), 92 Ohio St.3d 83, 2001-Ohio-150, 748 N.E.2d 528, the Court noted: "[h]owever,

a reviewing court cannot add matter to the record before it that was not a part of the trial court's proceedings, and then decide the appeal on the basis of the new matter. See, *State v. Ishmail* (1978), 54 Ohio St.2d 402, 8 O.O.3d 405, 377 N.E.2d 500. It is also a longstanding rule "that the record cannot be enlarged by factual assertions in the brief." *Dissolution of Doty v. Doty* (Feb. 28, 1980), Pickaway App. No. 411, citing *Scioto Bank v. Columbus Union Stock Yards* (1963), 120 Ohio App. 55, 59, 201 N.E.2d 227. Appellant's new material may not be considered. See, *North v. Beightler*, 112 Ohio St.3d 122, 2006-Ohio-6515, 858 N.E.2d 386, ¶ 7, quoting *Dzina v. Celebrezze*, 108 Ohio St.3d 385, 2006-Ohio-1195, 843 N.E.2d 1202, ¶ 16. Thus we cannot review appellant's contention in this appeal.[2] We would also note, however, the Clerk of Courts testified that she had reviewed the file containing appellant's conviction for aggravated assault and found no evidence that a motion to seal or expunge had ever been filed or granted by the court.

{¶70} Appellant next argues that his trial counsel was ineffective because he did not object to information coming before the jury concerning appellant's misdemeanor convictions for Domestic Violence.

{¶71} In the case at bar, the prosecutor did not link this testimony to one of the enumerated reasons set forth in Evid. R. 404(B), (i.e., proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident). Accordingly, the prosecutor has failed to establish that such evidence was properly admitted. However, the admission of prior bad acts is deemed harmless unless there is

---

[2] Appellant may however, be able to assert this claim in a Petition for Post Conviction Relief under R.C. 2953.21. We express no opinion on the timeliness or the merits of such a filing.

some reasonable probability the evidence contributed to the accused's conviction, *City of Columbus v. Taylor* (1988), 39 Ohio St.3d 162, 529 N.E.2d 1382.

{¶72} "'The failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *State v. Fears* (1999), 86 Ohio St.3d 329, 347, 715 N.E.2d 136, quoting *State v. Holloway* (1988), 38 Ohio St.3d 239, 244, 527 N.E.2d 831. In the case at bar, the evidence was limited and brief. Further as detailed in our disposition of appellant's First Assignment of Evidence there was more than sufficient independent evidence of appellant's guilt to render admission of the contested evidence harmless beyond a reasonable doubt.

{¶73} None of the instances raised by appellant rise to the level of prejudicial error necessary to find that he was deprived of a fair trial. Having reviewed the record that appellant cites in support of his claim that he was denied effective assistance of counsel, we find appellant was not prejudiced by defense counsel's representation of him. The result of the trial was not unreliable nor were the proceedings fundamentally unfair because of the performance of defense counsel.

{¶74} Appellant has failed to demonstrate that there exists a reasonable probability that, had trial counsel objected to the mention of his misdemeanor convictions the result of his case would have been different.

{¶75} Because we have found no instances of error in this case, we find appellant has not demonstrated that he was prejudiced by trial counsel's performance.

{¶76} Appellant's third assignment of error is overruled.

{¶77} For the forgoing reasons, the judgment of the Court of Common Pleas, Guernsey County, Ohio is affirmed.

By Gwin, P.J.,

Farmer, J., and

Edwards, J., concur

_____
HON. W. SCOTT GWIN

_____
HON. SHEILA G. FARMER

_____
HON. JULIE A. EDWARDS

WSG:clw 0823

[Cite as *State v. Harper*, 2011-Ohio-4568.]

IN THE COURT OF APPEALS FOR GUERNSEY COUNTY, OHIO

FIFTH APPELLATE DISTRICT

STATE OF OHIO                           :
                                        :
             Plaintiff-Appellee         :
                                        :
                                        :
-vs-                                    :        JUDGMENT ENTRY
                                        :
HENRY HARPER                            :
                                        :
                                        :
             Defendant-Appellant        :        CASE NO. 2010-CA-44


        For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Court of Common Pleas, Guernsey County, Ohio is affirmed. Costs to appellant.


                                        _____
                                        HON. W. SCOTT GWIN


                                        _____
                                        HON. SHEILA G. FARMER


                                        _____
                                        HON. JULIE A. EDWARDS